IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZAN GREEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-1498-N |
| | § | |
| JPMORGAN CHASE BANK, N.A., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER</u>

This Order addresses Defendant CTX Mortgage Company, LLC's ("CTX") motion to dismiss [12] and Defendant Brice, Vander Linden & Wernick, P.C.'s ("BVW") Rule 12(b)(6) motion to dismiss or, alternatively, Rule 12(e) motion for a more definite statement [21]. For the reasons that follow, the Court grants CTX's motion, and it grants BVW's motion in part and denies it in part.

## I. ORIGINS OF THE MOTIONS TO DISMISS

This case concerns real property and a related mortgage. On or about March 31, 2004, Plaintiff Zan Green ("Green") obtained a first mortgage home loan from CTX. Pl.'s Compl. ¶ 20 [1-1]. Sometime later, CTX allegedly sold the servicing rights to Defendant Washington Mutual Bank ("WMB"). *Id.* ¶ 23. Subsequently – on or around September 8, 2008 – "the banking operations of WMB were sold in a transaction facilitated by the [United States] Office of Thrift Supervision (OTS) and the Federal Deposit Insurance Corporation

(FDIC)" to Defendant JPMorgan Chase Bank, N.A. ("JPMorgan"), *id.* ¶¶ 27-28, presumably including the servicing rights to Green's mortgage.[1]

On or about January 15, 2011, JPMorgan hired BVW to "pursue a foreclosure action" on the property. *Id.* ¶ 36. BVW then began contacting plaintiff regarding the foreclosure, allegedly without providing verification of Green's debt, a complete accounting, an exact amount owed, or documents evincing the chain of title and the holder in due course of the mortgage. *Id.* ¶¶ 38-41. BVW first sent Green a notice of acceleration and notice of trustee's sale dated February 7, 2011 that listed Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") as the original mortgagee and JPMorgan as the current mortgagee. *Id.* ¶¶ 45-46. BVW then sent Green a second notice of acceleration and notice of trustee's sale dated June 14, 2011 – which was not signed – that listed (1) MERS as the original mortgagee, (2) JPMorgan as the current mortgagee, and (3) the date of the deed of trust as March 30, 2004. *Id.* ¶¶ 47-50.

Green subsequently brought suit in state court against Defendants, including CTX and BVW, to prevent foreclosure. *See* Pl.'s Compl. Green alleges that (1) Defendants violated her state and federal due process rights and federal equal protection right; (2) Defendants do not have standing to foreclose; (3) Defendants wrongfully attempted to foreclose; (4) Defendants were negligent; (5) Defendants' claim on the homestead represents a cloud on her title; (6) BVW and at least one other Defendant violated the Texas Debt Collection

---

[1]However, Green maintains that "upon closing and at all times material," Fannie Mae – not any of the other Defendants – actually owned the mortgage loan, *see* Pl.'s Compl. ¶ 21, and, therefore, no other Defendant could sell the mortgage loan and actually did not do so. *See id.* ¶¶ 24, 29.

Practices Act ("TDCPA"), TEX. FIN. CODE § 392.001, *et seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692a-p; (7) Defendants are liable for common law fraud, statutory fraud, and fraud by misrepresentation; (8) the Texas usury law prevents Defendants from accelerating her promissory note; and (9) Defendants intentionally inflicted emotional distress upon her. *See* Pl.'s Compl. ¶¶ 69-223.[2]  She requests damages, a declaratory judgment to determine the parties' rights to the property, and an injunction to prevent the foreclosure sale. *Id.* ¶¶ 68, 224-229.

## II. MOTION TO DISMISS STANDARD

When faced with a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  According to the Supreme Court, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face," i.e., "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).  A plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

---

[2]The Court addresses only those of Green's claims that she listed as causes of action in her complaint.  It therefore does not consider other potential claims in the parties' briefing, including, for example, promissory estoppel.

ORDER – PAGE 3

As the Supreme Court has observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. [*Iqbal v. Hasty*,] 490 F.3d 143, 157-158 [(2d Cir. 2007)]. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).
>
> In keeping with these principles[,] a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 129 S. Ct. at 1949-50.

In ruling on a Rule 12(b)(6) motion then, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider certain documents outside of the pleadings if they fall within four limited categories. First, "[a] court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey*

*v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).  Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding."[3]  *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted).  In addition, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'"  *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)).  And finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record."  *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "[t]he district court took appropriate judicial notice of publicly available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

---

[3]In this case, that includes the notices of acceleration and foreclosure sale.  *See* Pl.'s Compl., Exs. B & C, pp. 69-74 [1-1].

### III. THE COURT GRANTS CTX'S MOTION

Defendant CTX moves to dismiss Green's claims because (1) it has no current interest or involvement in the loan, (2) Green alleges no facts regarding CTX's involvement with the foreclosure, and (3) applicable statutes of limitation bar suit against CTX for any involvement it had with the loan at its inception in 2004. Def. CTX's Br. Supp. of Mot. Dismiss 7-8 [13] [hereinafter Def. CTX's Br. Supp.]. The Court addresses each of Green's claims against CTX in turn.[4]

#### A. Green Fails to State a Due Process Claim[5]

Green claims that she "is being deprived of the quiet enjoyment of her property without due process of law." Pl.'s Compl. ¶ 70. However, it is well established in both Texas and the Fifth Circuit that nonjudicial foreclosures do not violate a mortgagor's right to due process where the entity foreclosing is not a federal or state actor. *Barrera v. Sec. Bldg. & Inv. Corp.*, 519 F.2d 1166, 1169-74 (5th Cir. 1975) (holding that nonjudicial foreclosures by private parties under Article 3810 of the Texas Revised Civil Statues – subsequently recodified as section 51.002 of the Texas Property Code – do not deprive

---

[4]Green makes the following claims against CTX: state and federal due process claims; a lack of standing claim; a wrongful foreclosure claim; a negligence claim; a quiet title claim; common law fraud, statutory fraud, and fraud by misrepresentation claims; a usury claim; and an intentional infliction of emotional distress ("IIED") claim, and she requests declaratory relief against CTX.

[5]Green seems to allege that CTX violated only her procedural due process rights by "depriv[ing her] from the quiet enjoyment of her property." Pl.'s Compl. ¶ 70. To establish a procedural due process violation, "a plaintiff must prove that (1) he was deprived of a life, liberty, or property interest (2) without the process that was due." *Saucedo-Falls v. Kunkle*, 299 F. App'x 315, 319 (5th Cir. 2008) (unpub.) (citing *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 538 & n.3 (1985)).

individuals of their property in violation of the Fourteenth Amendment); *Williams v. Cheyenne Crossing Residential Ass'n, Inc.*, 2010 WL 5287509, at *2 (E.D. Tex. 2010) (collecting Fifth Circuit and Texas authorities); *see also, e.g.*, *Ramsey v. Neindorff*, 177 F.3d 977, at *1-2 (5th Cir. 1999) (unpub.) (explaining that *Barrera*'s holding applies with equal force under section 51.002 of the Texas Property Code); *Coleman v. JPMorgan Chase Bank, N.A.*, 2007 WL 656170, at *1 (S.D. Tex. 2007) (dismissing plaintiff's Fifth and Fourteenth Amendment due process claims under *Barrera*).[6]  Green has not alleged – nor could she likely allege – that CTX is a federal or state actor.[7]  Accordingly, the Court dismisses Green's due process claim against CTX.[8]

### B. The Court Dismisses Green's "Lack of Standing to Foreclose" Claim

Though this claim is difficult to understand, Green seems to allege that CTX does not possess the deed of trust or note and therefore cannot foreclose.  *See* Pl.'s Compl. ¶¶ 23-24. However, Green alleges no facts indicating that CTX is attempting to foreclose on the property; indeed, the two notices of acceleration and trustee's sale that Green attached to her

---

[6]To the extent that Green alleges a violation of his rights under the Texas Constitution, the claim fails for the same reason her federal claim fails.

[7]Indeed, Green alleges no facts specific to CTX under her due process claim.

[8]Green also argues that she has not been afforded equal protection as required by the Fourteenth Amendment. Pl.'s Compl. ¶ 84.  Again, the Fourteenth Amendment requires state action, which Green does not plead.  Moreover, Green has not alleged that she has been treated differently from similarly-situated individuals.  *Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir. 1999) ("[T]o establish an equal protection claim, the plaintiff must prove that similarly situated individuals were treated differently." (citing *Muhammad v. Lyanaugh*, 966 F.2d 901, 903 (5th Cir. 1992)).

ORDER – PAGE 7

complaint show that JPMorgan is attempting to foreclose.  *See* Pl.'s Compl., Exs. B & C, pp.

69-74.  Accordingly, the Court dismisses Green's "lack of standing" claim against CTX.

### C. Green's Wrongful Foreclosure Claim Fails

Green "seeks redress from Defendants, jointly and severally, [for] attempted wrongful

foreclosure and actual wrongful foreclosure if the foreclosure by the Defendants, jointly and

severally, is performed."  Pl.'s Compl. ¶ 100.  However, Green fails to state a claim on either

ground.  First, there exists no cause of action for "attempted wrongful foreclosure" in Texas.

*See Port City State Bank v. Leyco Constr. Co.*, 561 S.W.2d 546, 547 (Tex. App. – Beaumont

1977, no writ); *see also, e.g.*, *Anderson v. Baxter, Schwartz & Shapiro, LLP*, 2012 WL

50622, at *4 (Tex. App. – Hous. [14th Dist.] 2012, no pet.); *Owens v. BAC Home Loans

Servicing, L.P.*, 2011 WL 1494231, at *3 (S.D. Tex. 2011) (stating that district courts in the

Fifth Circuit applying Texas law "have consistently held that attempted wrongful foreclosure

claims . . . are not cognizable" and collecting cases).  Green's petition does not allege a

foreclosure has taken place.  Green cannot state a claim for wrongful foreclosure when there

has been no foreclosure.[9]  Accordingly, the Court dismisses Green's wrongful foreclosure

claims against CTX.[10]

---

[9]"The elements of a wrongful foreclosure claim are: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price."  *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App. – Corpus Christi 2008, no pet.) (citing *Charter Nat'l Bank-Hous. v. Stevens*, 781 S.W.2d 368, 371 (Tex. App. – Hous. [14th Dist.] 1989, writ denied)).

[10]Moreover, as with Green's "lack of standing" claim, Green has not alleged that CTX has had any involvement in any foreclosure proceedings.

### D. Green Fails to State a Negligence Claim[11]

Green alleges that "CTX owed a legal duty to [Green] to maintain the Original Mortgage Loan documents, service [Green's] mortgage correctly, not violate any laws when servicing the Mortgage and not conspire with others in an Artifice to Defraud [Green] and to not violate any laws when attempting to collect any debt," Pl.'s Compl. ¶ 126, and CTX breached those duties "when it failed to maintain the Original Mortgage Loan documents, service [Green's] mortgage correctly, failed to not violate any laws when servicing the Mortgage, conspired with others in an Artifice to Defraud [Green], violated State & Federal laws when attempting to collect any debt and by [CTX's] conduct violated various State & Federal laws," *id.* ¶ 131. Green also alleges that CTX, along with the other Defendants, breached several duties in dealing with its own employees. *Id.* ¶ 137.

However, CTX correctly argues that Green's negligence claims have a two-year statute of limitations in Texas, and, therefore, Green's claims expired in 2010 at the latest. Def. CTX's Br. Supp. 13; *see* TEX. CIV. PRAC. & REM. CODE § 16.003(a).[12] "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's

---

[11]Green also alleges that CTX is negligent per se. In Texas, "[n]egligence per se is a tort concept whereby a legislatively imposed standard of conduct is adopted by the civil courts as defining the conduct of a reasonably prudent person." *Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 278 (Tex.1979) (citing *Moughon v. Wolf*, 576 S.W.2d 603 (Tex. 1978)). But Green fails to allege which "state and federal laws" CTX has violated, and she therefore does not state a claim for negligence per se.

[12]CTX's involvement with the loan and servicing the loan ended either in 2004, when Green alleges Fannie Mae acquired the loan after closing, Pl.'s Compl. ¶ 21, or sometime before 2008, when CTX sold its interest to WMB, *id.* ¶¶ 23-27. Accordingly, Green would have had to bring any negligence claims against CTX related to its handling of her loan no later than 2010.

pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir.2003); *see also, e.g.*, *Jones v. Bock*, 549 U.S. 199, 215 (2007).  The Court thus dismisses Green's negligence claims against CTX.[13]

### E. Green's Quiet Title Claim Fails

Green claims that the Defendants, including CTX, claim a right in the property "in the Notice[s] of Acceleration and Trustee's Sale" dated February 7, 2011 and June 14, 2011. Pl.'s Compl. ¶ 156.  Green alleges that this claim is hostile to her claim on the property and constitutes a cloud upon her title.  *Id.* ¶ 157.[14]  But Green has not alleged that CTX asserts any interest in or claim to the property with regard to the mortgage loan – indeed, Green's complaint reveals that CTX either sold its interest in the loan to WMB or never had any interest in the first place because Fannie Mae owned the loan upon closing.  Pl.'s Compl. ¶¶ 21, 23.  Accordingly, the Court dismisses Green's quiet title claim as to CTX.

---

[13]Furthermore, as the Court discusses in Parts III. B, C, & G, Green pleads no facts demonstrating that CTX attempted to collect or foreclose on Green's loan, so the Court cannot see how CTX negligently violated any state and federal laws while attempting to collect a debt as Green alleges.

[14]A suit to quiet title is an "equitable action that clears a valid title against a defendant's invalid claim to the property."  *James v. Wells Fargo Bank, N.A.*, 2012 WL 778510, at *2 (N.D. Tex. 2012) (Boyle, J.) (citations omitted).  "The principal issue in a suit to quiet title is as to the existence of a cloud that equity will remove."  *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App. – Beaumont 2000, pet. denied) (quotation omitted).  The purpose of such a suit is to "enable the holder of the feeblest equity right to remove from his way to legal title any unlawful hindrance," including "any deed, contract, judgment or other instrument not void on its face that purports to convey any interest in or make any charge upon the land of a true owner, the invalidity of which would require proof."  *Id.*

### F. Green's Fraud Claims Fail

Green alleges that the Defendants, including CTX, made material false representations that they "would 'shop' around for the best rate and terms available to finance" the property with either knowledge of their falsity or reckless disregard for the truth[15] – intending that Green would rely on the representations – and that Green relied on the representations to her detriment because she accepted a higher interest rate than she presumably otherwise would have. Pl.'s Compl. ¶ 193, 195-96. However, as CTX argues, Green does not plead her fraud claims against CTX with particularity as Federal Rule of Civil Procedure 9(b) requires.

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "The elements of fraud include: (1) a misstatement or omission; (2) of material fact; (3) made with the intent to defraud; (4) on which the plaintiff relied; and (5) which proximately caused the plaintiff's injury." *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (citation omitted). As a result, "[p]leading fraud with particularity in [the Fifth C]ircuit requires 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *Id.* (last alteration in original) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). Although Green recites the elements of fraud in her complaint, she fails to plead the time and place of the false representations or who made these representations. Green merely alleges

---

[15]Green claims that the Defendants "knew that [they] were not going to shop for the best rate and [were] not concerned with the terms [Green] would receive because they intended to funnel the loan to another lender, who would compensate them with a kickback otherwise known as a Yield Spread Premium." Pl.'s Compl. ¶ 196.

that "the Lenders" – who she defines as JPMorgan, WMB, and CTX, Pl.'s Compl. ¶ 57 – promised to "shop around" for the best loan rate and terms available, which they apparently did not do, thereby obtaining a higher rate from Green, *id.* ¶ 196.  Accordingly, the Court dismisses Green's fraud claims with regard to CTX.[16]

### G. Green Fails to State a Usury Claim

Green alleges that acceleration of her note "create[d] a usurious situtation."  Pl.'s Compl. ¶ 204.  However, as with her "lack of standing" and wrongful foreclosure claims, Green has not alleged that CTX had any involvement in accelerating her loan.  Again, the two notices of acceleration and trustee's sale that Green attached to her complaint show that JPMorgan accelerated Green's loan.  *See* Pl.'s Compl., Exs. B & C, pp. 69-74.  Thus, the Court dismisses Green's usury claim against CTX.

### H. Green's IIED Claim Fails

Green alleges that Defendants, including CTX, knew about their own and each other's harassment, hostile collection efforts, and foreclosure threats, and Defendants "continue to fail and refuse to stop" these actions.  Pl.'s Compl. ¶¶ 212-16.  Green alleges that she has suffered severe emotional distress as a result of the Defendants' actions, including "painful

---

[16]Moreover, as CTX points out, Green's fraud claims relate to the origination of the mortgage loan, which occurred in 2004.  In Texas, a plaintiff must bring a fraud claim no later than four years from the time he or she should have discovered the fraud using reasonable diligence.  *Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 617 (Tex. 2007) (citing inter alia TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4)); *see Eagle Props., Ltd. v. Sharbauer*, 807 S.W.2d 714, 725 (Tex. 1991).  Without ruling on the issue, it seems Green likely could have discovered whether "the lenders" shopped around for alternate interest rates in 2004.  *See Val-Com Acquisitions Trust v. U.S. Bank Nat'l Ass'n as Trustee for Citigroup Mortg. Loan Trust Inc. Asset-Backed Pass-Through Certifications Series 2005-HE3*, 2010 WL 5140059, at *3 (N.D. Tex. 2010) (McBryde, J.).

emotional and mental reactions, such as embarrassment, fright, horror, grief, shame, humiliation, uncontrollable crying episodes, difficulty sleeping, emotional outbursts, stomach disorders, headaches, depression and worry," and that no relief from any other cause of action can remedy this distress. *Id.* ¶¶ 218-19. However, Green fails to plead facts demonstrating that CTX participated in any alleged harassment, collection efforts, or foreclosure threats. "To recover damages for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress is severe." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004) (citing *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998)). Green merely recites these elements in her complaint without factual support as to CTX, and the Court therefore dismisses this claim against CTX.[17]

---

[17]Further, as CTX notes, it is unclear whether Green may state an IIED claim against CTX because her other claims, which include wrongful foreclosure and negligence, are based upon the same facts. *See Mayo v. Halliburton Co.*, 2010 WL 4366908, at *4 (S.D. Tex. 2010) ("In this case, the gravamen of plaintiff's IIED claim is identical to her claims for negligence and negligent undertaking because all of her claims are based on the same alleged facts . . . . Under Texas law, the plaintiff may not recover for IIED when she has other avenues of redress, regardless of her ultimate success on the alternative available claims." (citing *Creditwatch v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005)).

### I. The Court Dismisses Green's Declaratory
### Judgment Request Against CTX

The Declaratory Judgment Act ("DJA")[18] is a procedural device; it creates no substantive rights and requires the existence of a justiciable controversy. *Lowe v. Ingalls Shipbldg.*, 723 F.2d 1173, 1179 (5th Cir.1984); *see Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937). "Thus, the Act provides no relief unless there is a justiciable controversy between the parties." *Kazmi v. BAC Home Loans Servicing, L.P.*, 2012 WL 629440, at *15 (E.D. Tex. 2012); *Turner*, 2011 WL 3606688, at *5 (explaining that DJA does not create a substantive cause of action; rather, it is "merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law.").[19]  As the Fifth Circuit has explained:

> In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.  Based on the facts alleged, there must be a substantial and continuing controversy between two adverse parties.  The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred.  Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury.

---

[18]Removal from state to federal court, in effect, converts a state court declaratory judgment action into one under the DJA.  *See, e.g.*, *Turner v. AmericaHomeKey, Inc.*, 2011 WL 3606688, at *5 n.11 (N.D. Tex. 2011) (Fitzwater, C.J.); *Morrice Logistics, Ltd. v. Intransit Inc.*, 2011 WL 1327397, at *4 n.1 (W.D. Tex. 2011); *i2 Techs. US, Inc. v. Lanell*, 2002 WL 1461929, at *7 n. 5 (N.D. Tex. 2002) (Fish, C.J.) (collecting cases).

[19]The Texas Uniform Declaratory Judgment Act, under which Green initially pled, is the same in this regard.  *See, e.g.*, *Chambers Cty. v. TSP Dev., Ltd.*, 63 S.W.3d 835, 840 (Tex. App. – Hous. [14th Dist.] 2001, pet. denied).

*Bauer v. Tex.*, 341 F.3d 352, 358 (5th Cir.2003) (citations and quotations omitted).  Federal courts have broad discretion to grant or refuse a request for declaratory judgment.  *Kazmi*, 2012 WL 629440, at *14 (citing *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991)).

Here, Green requests the Court issue a declaratory judgment "specifying Plaintiff['] s and Defendants['] right[s] and duties in connection with the first mortgage, note and deed of trust," Pl.'s Compl. ¶ 225 – specifically, that the Court declare that "(a) [JPMorgan] is not the holder of the First Mortgage Note and Deed; (b) . . . which party is the current Holder of the First Mortgage Note if such information can be obtained; and (c) the amount owed on the First Mortgage, note and deed and Plaintiff['] s responsibilities," *id.* ¶ 227.  Though Green pleads that at least two parties – Defendant JPMorgan and nonparty Fannie Mae – may currently claim some ownership interest in the mortgage, Pl.'s Compl. ¶¶ 19-35, Green has not alleged that CTX asserts any interest in or claim to the property – indeed, Green's complaint reveals that CTX either (1) sold its interest in the loan to WMB and that interest eventually made its way to JPMorgan or (2) never had any interest in the first place because Fannie Mae owned the loan upon closing.  Pl.'s Compl. ¶¶ 21, 23.  Because there is not a justiciable controversy between Green and CTX regarding ownership of the mortgage,[20] the Court dismisses Green's declaratory judgment request as to CTX.

---

[20]The Court notes, however, that a declaratory judgment suit about certain parties' rights and duties under a mortgage lien may survive a motion to dismiss in some cases.  *See* Order Granting in Part & Denying in Part Defs.' Mot. Dismiss [23], Mar. 4, 2012, *in Crum v. WMC Mortg. Corp. et al.*, No. 11-CV-2029-N, at 7-8 (N.D. Tex. 2012) (Godbey, J.); *Kingman Holdings, L.L.C. v. Bank of Am., N.A.*, 2011 WL 4431970, at *4 (E.D. Tex. 2011).

### IV. THE COURT GRANTS BVW'S MOTION IN PART AND DENIES IT IN PART

BVW moves to dismiss Green's claims against it based on "qualified immunity," or, alternatively, because Green fails to state any claim against it.[21]  Def. BVW's Mot. Dismiss 3-6.

### A. The Court Does Not Dismiss Green's Claims
### Against BVW Based on Attorney Qualified Immunity

BVW maintains that it is qualifiedly immune from suit for any actions BVW took relating to the foreclosure because it is JPMorgan's counsel.  Def. BVW's Mot. Dismiss 3. The Texas Court of Appeals has described attorney qualified immunity as follows:

> At common law, the rule of privity limits an attorney's liability to those in privity with the attorney.  *McCamish, Martin, Brown & Loeffler v. Appling Interests*, 991 S.W.2d 787, 792 (Tex.1999).  An attorney in Texas therefore is not liable to non-client third parties for legal malpractice.  *Id[.]*; *see also Barcelo v. Elliott*, 923 S.W.2d 575, 577 (Tex.1996).  The common law rule does not apply to all causes of action against an attorney.  If an independent duty to the non-client exists, "based on the professional [attorney's] manifest awareness of the non-client's reliance on the misrepresentation and the professional's intention that the non-client so rely," then an attorney may be liable for negligent or fraudulent misrepresentation.  *See McCamish*, 991 S.W.2d at 792 (allowing a cause of action for negligent misrepresentation by a non-client under the Restatement (Second) of Torts § 552).

---

[21]Rule 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  A party must make a motion under Rule 12(b)(6) "before pleading if a responsive pleading is allowed."  FED. R. CIV. P. 12(b).

In this case, BVW moved to dismiss under Rule 12(b)(6) after it had already filed an answer.  However, BVW included in its original answer the affirmative defense that Green failed to state a claim against it.  Def. BVW's Original Answer 14 [9].  "If the defendant has previously included failure to state a claim for which relief may be granted as an affirmative defense in his or her answer to the complaint, 'thereby giving notice' of the defense, then courts will generally permit a Rule 12(b)(6) motion to be filed after the answer."  *Delhomme v. Caremark Rx Inc.*, 232 F.R.D. 573, 576 (N.D. Tex. 2005) (Buchmeyer, J.) (citation omitted).  The Court follows this general practice here.

Perhaps as an offshoot of its privity jurisprudence, Texas case law has discouraged lawsuits against an opposing counsel if the lawsuit is based on the fact that counsel represented an opposing party in a judicial proceeding. *Bradt v. Sebek*, 14 S.W.3d 756, 766 (Tex.App. – Houston [1st Dist.] 2001, pet. denied). An attorney has a duty to zealously represent his clients within the bounds of the law. *Bradt v. West*, 892 S.W.2d 56, 71-72 (Tex.App. – Houston [1st Dist.] 1994, writ denied). . . . Thus, to promote zealous representation, courts have held that an attorney is "qualifiedly immune" from civil liability, with respect to non-clients, for actions taken in connection with representing a client in litigation. *See, e.g.*, *Butler v. Lilly*, 533 S.W.2d 130, 131-34 (Tex.App. – Houston [1st Dist.] 1976, writ dism'd).

This qualified immunity generally applies even if conduct is wrongful in the context of the underlying lawsuit. *Renfroe v. Jones & Assocs.*, 947 S.W.2d 285, 288 (Tex.App. – Fort Worth 1997, writ denied) ("Under Texas law, attorneys cannot be held liable for wrongful litigation conduct."). For example, a third party has no independent right of recovery against an attorney for filing motions in a lawsuit, even if frivolous or without merit . . . Thus, an attorney's conduct, even if frivolous or without merit, is not independently actionable if the conduct is part of the discharge of the lawyer's duties in representing his or her client. *Id.* at 74; *Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 441 (Tex.App. – Houston [14th Dist.] 2000, pet. denied). The immunity focuses on the type of conduct, not on whether the conduct was meritorious in the context of the underlying lawsuit. *Renfroe*, 947 S.W.2d at 288.

*Alpert v. Crain, Canton & James, P.C.*, 178 S.W.3d 398, 405-06 (Tex. App. – Hous. [1st Dist.] 2005, pet denied); *see also, e.g.*, *Smith v. Nat'l City Mortg.*, 2010 WL 3338537, at *3-4 (W.D. Tex. 2010).[22]

Under this formulation, courts in this Circuit have held that attorneys are qualifiedly immune from suit when representing clients in a foreclosure. *See Gibson v. Fed. Home Loan*

---

[22]Attorney qualified immunity does not protect against an attorney's fraudulent acts that injure a third person or an attorney's knowing entrance into a conspiracy to defraud a third person. *Bashore v. Bank of Am.*, 2012 WL 629060, at *4 (E.D. Tex. 2012) (citing *Lookover v. Sunflower Terrace II, Ltd.*, 696 S.W.2d 468, 472 (Tex. App. – Hous. [1st Dist.] 1985, no writ)). "To be liable under this formulation, an attorney must 'knowingly commit' a 'fraudulent act outside the scope of his legal representation.'" *Id.* (quoting *Alpert*, 178 S.W.3d at 406).

*Mortg. Corp.*, 2012 WL 1898886, at *3 (S.D. Tex. 2012) (dismissing law firm from post-foreclosure suit based on Texas qualified immunity and collecting cases); *Setzer v. Richards*, 2012 WL 32943, at *8 (W.D. Tex. 2012) (same); *Smith*, 2010 WL 3338537, at *3-4 (same). However, this Court is somewhat skeptical of applying blanket attorney qualified immunity outside of a litigation context. Texas cases make clear that qualified immunity protects attorneys from their conduct during *litigation* and claims investigation prior to filing suit, such as filing motions on behalf of their clients or making legal arguments. *See Alpert*, 178 S.W.3d at 406; *Hunt v. BAC Home Loans Servicing, LP*, 2012 WL 219330, at *8-10 (S.D. Tex. 2012) (explaining that attorney qualified immunity applies to conduct taken during litigation or claims investigation and citing cases). However, it is less clear whether such immunity applies to BVW's representation of its client, JPMorgan, during a nonjudicial foreclosure, which, by its very nature, does not involve litigation or the judicial system,[23] *see*

---

[23]Regardless, it seems fairly certain that BVW is not qualifiedly immune from Green's TDCPA and FDCPA claims based on its status as JPMorgan's attorney. Green claims that BVW is a "third-party debt collector," as defined in FDCPA, 15 U.S.C. § 1692a(6), and TDCPA, TEX. FIN. CODE § 392.001(7). Pl.'s Compl. ¶ 162. A "debt collector" under FDCPA, in pertinent part, is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). "It is well settled that an attorney is not exempt from liability as a debt collector under [FDCPA] . . . [a]s long as the attorney *regularly* collects or attempts to collect debt on behalf of another." *Westervelt v. Ocwen Loan Servicing, LLC*, 2009 WL 2567852, at *2 (E.D. Tex. 2009); *see also, e.g.*, *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995); *Addison v. Braud*, 105 F.3d 223, 224 n.1 (5th Cir. 1997); *Hunt*, 2012 WL 219330, at *9. Similarly, TDCPA defines a "third-party debt collector" as:

> a debt collector, as defined by 15 U.S.C. Section 1692a(6), but does not include an attorney collecting a debt as an attorney on behalf of and in the name of a client unless the attorney has nonattorney employees who:
>
>> (A) are regularly engaged to solicit debts for collection; or

*supra* Part III.A.  Accordingly, the Court does not dismiss BVW on the basis of blanket qualified immunity at this juncture.[24]

### B. The Court Dismisses Green's Due Process, Wrongful Foreclosure, Quiet Title, Fraud, and Usury Claims

Green clearly fails to state claims for several of her proffered causes of action against BVW.  First, because Green has not alleged BVW is a federal or state actor, she does not state a due process violation against it for the reasons stated in Part III.A, above.  In addition, as the Court explains in Part III.C, above, there is no attempted wrongful foreclosure claim in Texas, and Green cannot state a claim for wrongful foreclosure against BVW when no foreclosure has taken place.  Third, Green does not state a claim against BVW for quiet title because she does not allege BVW claims an ownership interest in her property or any interest in the loan that clouds her title, and the notices of acceleration and sale that Green attached to her complaint demonstrate that BVW asserts only JPMorgan's interest in the property, not its own.  *See* Pl.'s Compl., Exs. B & C, pp. 69-74.  Next, Green's fraud claims fail because she does not allege that BVW made any fraudulent representations; Green merely alleges that "the Lenders" – who she defines as JPMorgan, WMB, and CTX, Pl.'s Compl. ¶ 57 –

---

(B) regularly make contact with debtors for the purpose of collection or adjustment of debts.

TEX. FIN. CODE § 392.001(7).  As the statute makes clear, attorneys may be liable under TDCPA if they employ nonattorney personnel who engage in debt collection.

[24]The Court notes, without opining on the issue, that Green alleges that BVW knowingly participated in the "artifice to defraud," which may be sufficient to bring BVW's alleged conduct outside of the scope of qualified immunity.  *See Bashore*, 2012 WL 629060, at *4 (no qualified immunity if an attorney knowingly commits a fraudulent act outside of the scope of his or her representation).

promised to "shop around" for the best loan rate and terms available, which they apparently did not do, thereby obtaining a higher rate from Green, *id.* ¶ 196.[25]   And finally, Green's usury claim fails because it is clear from the notices of acceleration and sale that BVW merely sent notice to Green of JPMorgan's acceleration of Green's loan; BVW did not accelerate the loan.  *See* Pl.'s Compl., Exs. B & C, pp. 69-74.  Accordingly, the Court dismisses Green's due process, wrongful foreclosure, quiet title, fraud, and usury claims against BVW.

Green's claims against BVW for negligence, IIED, and violations of FDCPA and TDCPA, along with her declaratory judgment request, require slightly more explanation, and the Court thus turns to analyze them in more detail.

### C. Green Fails to State a Negligence Claim[26]

Green alleges that BVW "owed a legal duty to [Green] to perform its due diligence, provide verification of the debt, provide an accounting indicating the exact amount owed, provide the name of the actual owner in due course of the mortgage, not make any misrepresentations, use untruthful documents in an attempt to foreclose against [Green] and not violate any laws when attempting to collect and foreclose," Pl.'s Compl. ¶ 130, and BVW breached these duties when "it failed to maintain the Original Mortgage Loan documents, service [Green's] mortgage correctly, failed to not violate any laws when servicing the

---

[25]Moreover, Green fails to plead fraud against BVW with particularity under Rule 9(b).  *See supra* Part III.F.

[26]Again, Green also alleges that BVW is negligent per se but fails to allege which "state and federal laws" BVW has violated.  *See supra* note 13.

mortgage, conspired with others in an Artifice to Defraud [Green], violated State & Federal Laws when attempting to collect any debt and by their conduct violated various State & Federal laws," *id.* ¶ 135.  Green also alleges that BVW, along with the other Defendants, breached several duties in dealing with its own employees.  *Id.* ¶ 137.

However, as BVW points out, Green's "statements are conclusory, and fail to establish BVW owed a duty to [Green]."  Def. BVW's Mot. Dismiss 4.  In Texas, "[a]n attorney's duties that arise from the attorney-client relationship are owed only to the client, not to third persons, such as adverse parties" who "have not retained the attorney and [to whom] the attorney has not rendered . . . services."  *Renfroe v. Jones & Assocs.*, 947 S.W.2d 285, 287 (Tex. App. – Fort Worth 1997, writ denied).  That is, "[a]n attorney only owes a duty of care to his clients and not to third parties, even if they may have been damaged by the attorney's representation of the client."  *Brown v. Green*, 302 S.W.3d 1, 16 (Tex. App. – Hous. [14th Dist.] 2009, no pet.) (citations omitted); *cf. Barcelo v. Elliott*, 923 S.W.2d 575, 577-78 (Tex.1996) (refusing to create exception to privity barrier to allow third-party grandchildren/beneficiaries to sue attorney on their own behalf when attorney allegedly negligently implemented estate plan of deceased).  Because (1) Green's conclusory allegations fail to allege that BVW was negligent and (2) BVW does not owe a duty to Green arising from its representation of JPMorgan in the nonjudicial foreclosure, the Court dismisses Green's negligence claims against BVW.

### D. Green Does Not Sufficiently State a Claim for IIED

As the Court explains in Part III.H, above, "To recover damages for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress is severe." *Hoffmann-La Roche Inc.*, 144 S.W.3d at 445. Extreme and outrageous conduct is "conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)). "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* (citing inter alia *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999)). It is the Court's job to determine whether a defendant's conduct was extreme and outrageous in the first instance; but where reasonable minds may differ, it is for a jury to determine whether a defendant's conduct was extreme and outrageous in a particular case. *Id.* (citing inter alia *GTE Sw., Inc.*, 998 S.W.2d at 616).

Here, Green merely recites the IIED elements in her complaint and states, in various places in her complaint, (1) that BVW "continues with its threats, foreclosure and collection efforts" despite Green's dispute of the debt, Pl.'s Compl. ¶ 38,[27] and (2) that all of the Defendants "refuse to stop the harassment, hostile collection efforts and foreclosure threats,"

---

[27]The only action Green clearly alleges BVW took was to send her two notices of acceleration and sale. Pl.'s Compl. ¶¶ 45-50; *see* Pl.'s Compl., Exs. B & C, pp. 69-74 (notices of acceleration and sale).

*id.* ¶ 216.  Green's conclusory statements about harassment – with no factual support – fail to show that BVW's conduct was extreme and outrageous, and she therefore fails to state an IIED claim against BVW.  Accordingly, the Court dismisses Green's IIED claim against BVW.[28]

### E. The Court Declines to Dismiss Green's FDCPA Claims, But Green Fails to State a TDCPA Claim

First, Green alleges that BVW violated FDCPA sections 1692g(a), 1692e(2)(A), and 1692e(11).[29]  Pl.'s Compl. ¶¶ 165-68.  The Court finds that Green provides enough information in her complaint to state plausible claims against BVW for violations of each of these sections.  *See id.* ¶¶ 165-68; Pl.'s Compl., Exs. B & C, pp. 69-74 (notices of acceleration and sale and letter from BVW).  However, as attorneys, BVW may not be liable under FDCPA; as the Court mentions in note 24, above, "[i]t is well settled that an attorney

---

[28]Again, it is unclear whether Green can state an IIED claim against BVW because her other claims, which include wrongful foreclosure and negligence, are based upon the same facts.  *See supra* note 19.

[29]Section 1692g(a) provides that, within five days after the initial communication with a consumer in connection with debt collection, a debt collector shall send the consumer a written notice containing the following information: the amount of the debt, to whom the consumer owes the debt, a statement that the debt collector will assume the validity of the debt unless the consumer disputes the validity of the debt, a statement that, if the consumer notifies the debt collector, in writing, within thirty days that he or she disputes the debt, the debt collector will furnish verification; and a statement that, upon the consumer's written request within thirty days, the debt collector will provide the consumer with the name and address of the original creditor if different from the current creditor, unless the initial communication with the consumer contains all of the foregoing or the consumer has paid the debt.  Section 1692e(2)(A) makes it a violation of the FDCPA for a debt collector to falsely represent the character, amount, or legal status of a debt.  And section 1692e(11) provides that a debt collector must disclose in both its initial communication with the consumer and all subsequent communications that it is attempting to collect a debt and that any information it obtains will be used for that purpose.

is not exempt from liability as a debt collector under [FDCPA] . . . [a]s long as the attorney *regularly* collects or attempts to collect debt on behalf of another." *Westervelt*, 2009 WL 2567852, at *2; *see also, e.g.*, *Heintz*, 514 U.S. at 299; *Addison*, 105 F.3d at 224 n.1; *Hunt*, 2012 WL 219330, at *9. To be liable then, BVW must regularly engage in debt collection. In a letter to Green, BVW admits that "legal precedent is not clear as to whether the sending of this letter makes us a debt collector" and "to the extent that it does, we are pleased to advise you that this is an attempt to collect a debt." Pl.'s Compl., Ex. C, p. 74. Accordingly, the question of whether BVW regularly engages in debt collection and is therefore a debt collector is a question better left for summary judgment or trial, and the Court therefore does not dismiss Green's FDCPA claims at this time.

Green fails, however, to state a TDCPA claim. To demonstrate potential liability under TDCPA, attorneys must employ nonattorney personnel who engage in debt collection. TEX. FIN. CODE § 392.001(7). Green alludes to BVW's employees, who may or may not be attorneys, in her complaint. *See* Pl.'s Compl. ¶¶ 137, 166 (outlining BVW's duty to supervise its employees under Green's negligence claim and referring to "representatives" from BVW who phoned Green under Green's FDCPA claim). However, though Green alleges that JPMorgan violated TDCPA, Green makes no allegations against BVW under TDCPA, let alone provides any factual support for her TDCPA claims against BVW. Accordingly, the Court dismisses Green's TDCPA claim against BVW.[30]

_____

[30]Since Green fails to state a TDCPA claim against BVW, she also fails to state a claim for damages against BVW under TDCPA's tie-in provision to the Texas Deceptive Trade Practices Act ("DTPA"), TEX. FIN. CODE § 392.404(a) ("A violation of [DCPA] is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code [i.e.,

### F. The Court Denies Green's Request for Declaratory Judgment as to BVW

Again, Green requests the Court issue a declaratory judgment "specifying Plaintiff['']s and Defendants['] right[s] and duties in connection with the first mortgage, note and deed of trust," Pl.'s Compl. ¶ 225 – specifically, that the Court declare that "(a) [JPMorgan] is not

---

DTPA], and is actionable under that subchapter."). *Turner*, 2011 WL 3606688, at *4.

However, the Court notes that even if Green had stated a DCPA claim against BVW, she would not be able to recover under DTPA, Tex. Bus. & Com. Code § 17.50(h). To pursue a claim under DTPA, even through a tie-in statute such as TDCPA, a plaintiff must be a "consumer" as DTPA defines it. *See, e.g.*, *Mendoza v. Am. Nat'l Ins. Co.*, 932 S.W.2d 605, 608 (Tex. App. – San Antonio 1996, no writ); *Cushman v. GC Servs., L.P.*, 397 F. App'x 24, 27-29 (5th Cir. 2010) (unpub.) (rejecting argument that TDTPA's tie-in provision does not require "consumer" status); *Swim v. Bank of Am., N.A.*, 2012 WL 170758, at *6 (N.D. Tex. 2012) (Lynn, J.); *Marquez v. Fed. Nat'l Mortg. Ass'n*, 2011 WL 3714623, at *5-6 (N.D. Tex. 2011) (Lindsay, J.); *Broyles v. Chase Home Fin.*, 2011 WL 1428904, at *3-4 (N.D. Tex. 2011) (Fish, J.). The question of whether one is a consumer under DTPA is a question of law for the court to decide. *E.g.*, *Bohls v. Oakes*, 75 S.W.3d 473, 479 (Tex. App. – San Antonio 2002, pet. denied); *Mendoza*, 932 S.W.2d at 608.

The DTPA defines a "consumer" as "an individual . . . who seeks or acquires by purchase or lease, any goods or services," Tex. Bus. & Com. Code § 17.45(4); *see also, e.g.*, *First State Bank v. Keilman*, 851 S.W.2d 914, 928 (Tex. App. – Austin 1993, writ denied), and it defines "goods" as "tangible chattels or real property purchased or leased for use," Tex. Bus. & Com. Code § 17.45(1). Accordingly, a person who buys a home or property may be a consumer under the DTPA because that home or property qualifies as a "good." *See, e.g.*, *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 566-67 (Tex. 1984); *Broyles*, 2011 WL 1428904, at *4 (citing *La Sara Grain*, 673 S.W.2d at 567 and *Maginn v. Norwest Mortg. Corp.*, 919 S.W.2d 914, 929 (Tex. App. – Austin 1996, no pet.)). But the home or property must form the basis of the complaint, rather than the security instrument forming the basis of the complaint – that is, "where, as in this case, . . . the servicing or administration of the loan is merely incidental to a plaintiff's prior objective to purchase a residence, such events do not bestow consumer status upon the plaintiff for purposes of the DTPA." *Woods v. Bank of Am., N.A.*, 2012 WL 1344343, at *7 (N.D. Tex. 2012) (Boyle, J.); *see also, e.g.*, *Maginn*, 919 S.W.2d at 929; *Manno v. BAC Home Loans Servicing, LP*, 2011 WL 3844900, at *5 (W.D. Tex. 2011) ("[A]t the time of the acts of which he complains, [plaintiff] already owned the house subject to the Bank's mortgage interest. As a matter of law, [plaintiff's] real property is not the basis of his complaint. Thus, [plaintiff] does not qualify as a 'consumer' under DTPA and does not have standing to bring a DTPA claim.").

the holder of the First Mortgage Note and Deed; (b) . . . which party is the current Holder of the First Mortgage Note if such information can be obtained; and (c) the amount owed on the First Mortgage, note and deed and Plaintiff[']s responsibilities." *Id.* ¶ 227.  As with CTX, though Green refers to all Defendants in her request, Green does not allege that BVW is claiming any right in the mortgage, and, as with Green's quiet title claim against BVW, the notices of acceleration and sale that Green attached to her complaint demonstrate that BVW asserts only JPMorgan's interest in the property and not its own.  *See* Pl.'s Compl., Exs. B & C, pp. 69-74.  Because there does not appear to be a justiciable controversy between Green and BVW regarding ownership of the mortgage,[31] the Court dismisses Green's declaratory judgment request as to BVW under its broad discretion to refuse a request for declaratory judgment.  *See Kazmi*, 2012 WL 629440, at *14 (courts have broad discretion to grant or refuse declaratory judgment request).

## CONCLUSION

The Court dismisses Green's state and federal due process claims; lack of standing claim; wrongful foreclosure claim; negligence claim; quiet title claim; common law fraud, statutory fraud, and fraud by misrepresentation claims; usury claim; and IIED claim against CTX, and it dismisses Green's request for declaratory relief against CTX.  The Court also dismisses Green's due process claims, wrongful foreclosure claim, quiet title claim, fraud

---

[31]Green alleges a justiciable controversy exists regarding whether the note holder, whoever that may be, has approved any mortgage servicer to collect payments under the mortgage, note, and deed and the line of credit note and deed.  Pl.'s Compl. ¶ 226.  However, this request pertains to the note holder, not anyone who may be helping to collect payments, such as BVW.

claim, usury claim, negligence claim, IIED claim, and TDCPA claim against BVW, and it dismisses Green's request for declaratory relief against BVW. However, the Court does not dismiss Green's FDCPA claims against BVW.

However, the Court grants Green leave to amend her complaint to address the deficiencies the Court has identified in this Order. *See, e.g.*, *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (noting that Fifth Circuit precedent supports the premise that "granting leave to amend is especially appropriate" where district court dismisses plaintiff's complaint for failure to state a claim and explaining that, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal"); *Garcia v. Bank of N.Y. Mellon*, 2012 WL 692099, at *4-5 (N.D. Tex. 2012) (Fitzwater, C.J.) (allowing plaintiffs to amend complaint in foreclosure action). Accordingly, Green may file an amended complaint within twenty-eight (28) days of the date of this Order.

Signed August 30, 2012.

David C. Godbey
United States District Judge