## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **ZAN E. GREEN,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **SELIM TAHERZADEH, in his official capacity** | ) | |
| **as an agent claiming to represent BRICE,** | ) | |
| **VANDER LINDEN & WERNICK, P.C.;** | ) | |
| **BRICE, VANDER LINDEN & WERNICK, P.C.** | ) | |
| **as alleged Substitute Trustee for JPMORGAN** | ) | |
| **CHASE BANK, NATIONAL ASSOCIATION;** | ) | **CIVIL ACTION NO: 3:11-CV-01498-N** |
| **JPMORGAN CHASE BANK, N.A.;** | ) | |
| **JPMORGAN CHASE BANK, N.A. as alleged** | ) | |
| **Successor-In-Interest to WASHINGTON** | ) | |
| **MUTUAL BANK, F.A.;** | ) | |
| **MERSCORP HOLDINGS, INC.; MORTGAGE** | ) | |
| **ELECTRONIC REGISTRATION SYSTEMS,** | ) | |
| **INC. ("MERS") as nominee for** | ) | |
| **CTX MORTGAGE COMPANY, LLC and its** | ) | |
| **Successors and Assigns; and the Successors and** | ) | |
| **Assigns of MERS;** | ) | |
| **CTX MORTGAGE COMPANY, LLC;** | ) | |
| **JOHN & JANE DOES 1-50, TRUSTS 1-50 and** | ) | |
| **CORPORATIONS 1-50 as unknown claimants** | ) | |
| **of 9110 ESPLANADE DRIVE, DALLAS,** | ) | |
| **TEXAS 75220,** | ) | |
| **9110 ESPLANADE DRIVE, DALLAS, TEXAS** | ) | |
| **75220** | ) | |
| *Jointly and Severally,* | ) | |
| *Defendants-Claimants* | ) | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S SECOND AMENDED COMPLAINT
## AND DEMAND FOR JURY TRIAL

TO THE HONORABLE JUDGE:

COMES NOW ZAN E. GREEN (hereinafter "Plaintiff") in the above-styled civil action and

files this Second Amended Complaint and Jury Demand for quiet title and declaratory judgment; and for

**PLAINTIFF'S SECOND AMENDED COMPLAINT**
**AND DEMAND FOR JURY TRIAL** 1

negligence and for numerous violations of the Fair Debt Collection Practices Act; and for injunctive

relief; and for statutory, exemplary and punitive damages against Defendants SELIM TAHERZADEH, in

his official capacity as an agent claiming to represent BRICE, VANDER LINDEN & WERNICK, P.C.;

BRICE, VANDER LINDEN & WERNICK, P.C. as alleged Substitute Trustee for JPMORGAN CHASE

BANK, N.A.; JPMORGAN CHASE BANK, N.A. as alleged Successor-In-Interest to WASHINGTON

MUTUAL BANK, F.A.; MERSCORP HOLDINGS, INC. and its wholly-owned subsidiary MORTGAGE

ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") as nominee for CTX MORTGAGE

COMPANY, LLC and its Successors and Assigns; and the Successors and Assigns of MERS; CTX

MORTGAGE COMPANY, LLC; JOHN & JANE DOES 1-50, TRUSTS 1-50 and CORPORATIONS 1-

50 as unknown claimants of 9110 ESPLANADE DRIVE, DALLAS, TX 75220 and in support hereof

would respectfully state to this Court:

## I.  PARTIES

1.       Plaintiff ZAN E. GREEN is a citizen of Dallas County, Texas who resides at 9110

Esplanade Drive, Dallas, Texas 75220.

2.       Defendant SELIM TAHERZADEH, in his official capacity as an agent, claiming to

represent BRICE, VANDER  LINDEN & WERNICK, P.C., is believed to be a Texas State Bar-licensed

attorney, who may be served with process at 9441 LBJ Freeway, Suite 250, Dallas, Texas 75243.

3.       Defendant BRICE, VANDER LINDEN & WERNICK, P.C. (hereinafter "BRICE"), as

alleged Substitute Trustee for JPMORGAN CHASE BANK, NATIONAL ASSSOCIATION, consists of

a group of Texas Bar-licensed attorneys performing third-party debt collection services and foreclosure-

related actions, and is a Texas professional corporation. It may be served with process by serving

Lawrence J. Buckley, Lance Vander Linden or anyone else authorized to accept service at the firm's

principal place of business located at 9441 LBJ Freeway, Suite 250, Dallas, Texas 75243.

4.     Defendant JPMORGAN CHASE BANK, NATIONAL ASSOCIATION (hereinafter "CHASE") is a corporation that conducts business in Texas as a financial institution and has headquarters in the State of New York. This Defendant, who purports itself to be the Servicer and Mortgagee of the subject mortgage loan may be served with process through its registered agent CT Corporation System, at 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201.

5.     Defendant JPMORGAN CHASE BANK, N.A., as alleged Successor-In-Interest to WASHINGTON MUTUAL BANK, F.A. (hereinafter "CHASE/WaMu"), was the result of acquisition through the Federal Deposit Insurance Corporation ("FDIC") as receiver for Washington Mutual Bank, F.A., now defunct. This Defendant may be served with process through its registered agent CT Corporation System, at 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201.

6.     Defendant MERSCORP HOLDINGS, INC. (fka MERSCORP, INC.; hereinafter "MERSCORP") is the parent company of MERS and is a Delaware corporation with its principal place of business in Reston, Virginia. This corporation is a for-profit entity that filed a Certificate of Merger on February 22, 2012, changing its name to the presently-listed name from its old name, MERSCORP, Inc., which came into fruition on January 1, 1999. It can be served with process through its registered agent Corporation Trust Company, at 1209 Orange Street, Wilmington, Delaware 19801.

7.     Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") as Nominee for CTX MORTGAGE COMPANY, LLC and its Successors and Assigns; and the Successors and Assigns of MERS is a bankruptcy-remote entity that is a wholly-owned subsidiary of Defendant MERSCORP and is also a Delaware corporation, and its principal place of business is also in Reston, Virginia. This entity was first created in 1995 and has since been dissolved; re-incorporated and dissolved a second time; and then re-incorporated again on January 1, 1999 at the same time its parent MERSCORP, Inc. (now MERSCORP Holdings, Inc. as heretofore listed) came into fruition.   It can be

served with process through its registered agent Corporation Trust Company, at 1209 Orange Street, Wilmington, Delaware 19801.

8.      Defendant CTX MORTGAGE COMPANY, LLC (hereinafter "CTX") is believed to be a table-funded mortgage broker; a Delaware corporation licensed to do business in the State of Texas, maintaining a principal place of business in Dallas, Texas.  It may be served with process through its registered agent Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

9.      Defendants JOHN & JANE DOES 1-50, TRUSTS 1-50 and CORPORATIONS 1-50 as unknown claimants of 9110 Esplanade Drive, Dallas, Texas 75220 ("Property") are unknown entities that may consist of individuals, creditors, investors, collateralized debt obligations conveyed into special purpose vehicles, and foreign trusts and corporations that may conduct business within or without the State of Texas.  These Defendants must be served with publication to cause them to come forward and prove their claims and interests before this Court or be forever barred from making such claim post-decree, for which the Plaintiff herein requests an immediate order for publication to serve those parties with process.

10.     Defendant 9110 ESPLANADE DRIVE, DALLAS, TEXAS 75220 (hereinafter "Property") is the subject of this quasi in rem action in equity, which must be entered as a Defendant for the purposes of direct (in rem) control by this Court. Any and all potential claimants (including publication to this Defendant Property), including the unknown Successors and Assigns of MERS (as defined herein) must also be noticed by publication as directed by this Court. This proceeding pertains to homesteaded real property and improvements situated in Dallas County, Texas, the primary residence of the Plaintiff, more specifically described by legal description, to wit:

> **Lot 18, in Block A/5084, Frenchman's Creek Addition, an Addition to the City of Dallas, Dallas County, Texas according to the Plat thereof recorded in Volume 80203, Page 579, of the Map Records of Dallas County, Texas.**

## II. JURISDICTION AND VENUE

11.     This Court has jurisdiction and venue over the parties and subject matter of this proceeding

pursuant to 28 U.S.C. §§ 1331, 1367, 1391, 1441 and 1446; 15 U.S.C. § 1681p and 15 U.S.C. § 1692 et

seq. and this Court's Order (Doc#25) dated February 9, 2012. Plaintiff invokes this Court's jurisdiction

pursuant to Rule 18(a) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1367 to hear and

adjudicate claims arising out of the transactions set forth herein that violate rights and duties established

by the laws of the State of Texas. This Court has jurisdiction and venue over all of Plaintiff's claims

arising under the laws of the State of Texas under 28 U.S.C. §§ 1367, 1441(c) and this Court's Order

(Doc#25) dated February 9, 2012.

## III.   CONDITIONS PRECEDENT

12.     All conditions precedent; to Plaintiff bringing her claims against Defendants for quiet title

and declaratory judgment; and for negligence and for numerous violations of the Fair Debt Collection

Practices Act; have either been performed, have occurred or have been waived.

## IV.   GENERAL ALLEGATIONS

### A. As to Deraignment of Title

13.     The Plaintiff herein claims that she is the owner of the Property in fee simple title with full

rights to title vested in her, the same basis found to be sufficient by the Texas Court of Appeals (14th

DCA, Houston) on April 12, 2011 in *Mortgage Electronic Registration Systems, Inc. v. Nancy Groves*,

No. 14-10-00090-CV, to prove her legal and equitable interests in her real property.

14.     On April 13, 2004 at 10:57 a.m., a three-page "Warranty Deed with Vendor's Lien in

Favor of a Third Party" which was issued to Plaintiff Zan E. Green, as Grantee, dated March 30, 2004, for

the subject Property by Susan Hawley, as Grantor, was recorded in the official property records of the

office of the Clerk of Dallas County, Texas as Instrument #2839930 and was duly filed for record in Book 20040071 beginning at Page 11011 and ending at Page 11013.  A copy of this Instrument is attached hereto as Exhibit "A" and incorporated herein by reference.

15.     On April 13, 2004 at 10:57 a.m., a twenty-page "Deed of Trust with an attached Planned Urban Development Rider" (hereinafter "DOT"), allegedly executed by Plaintiff Zan E. Green, as Grantor for the subject Property, was recorded in the official property records of the office of the Clerk of Dallas County, Texas as Instrument #2839931 and was duly filed for record in Book 20040071 beginning at Page 11014 and ending at Page 11033. The Vendor's Lien issued as part of the Warranty Deed, supra, was in the amount of $333,700 in favor of Defendant lender CTX Mortgage Company, LLC and was also dated March 30, 2004. A copy of this Instrument is attached hereto as Exhibit "B" and incorporated herein by reference.

16.     The Plaintiff maintains that the real property records of Dallas County, Texas (maintained by the Dallas County Clerk) are the legal repository for all records duly recorded and indexed in the order they were conveyed or granted to perfect the lien right (by notice to the world) of any or all claimants. The DOT as referenced in Exhibit "B", supra, shows the last officially known lienholder of record.  No other lien holder or assignee has officially recorded or perfected its interests in said real property records.

17.     The requisite authority given to the Clerk of Dallas County, Texas to accept these documents into recordation is found in the Texas Government Code at § 192.001.  The Plaintiff maintains that all documents affecting Exhibit "B" are mandated (once Exhibit "B" was recorded) by § 192.007 of the Texas Government Code. Texas Government Code § 192.007 mandates that all documents subsequent affecting the Property MUST be recorded. The failure to comply with the Code § 192.007 mandate is one of the major (state wide all county class action) issues in dispute in *Dallas County, Texas vs. MERSCORP, Inc.*, Civil Action No. 3:11-cv-2733-0, currently pending in this Court (i.e., the U. S.

District Court for the Northern District of Texas)(See, ECF Document No. 65 dated May 25, 2012; in which the court granted in part and denied in part the Defendants motion to dismiss therein). This cause of action is still ongoing in this federal district court.

18.     The Plaintiff further claims that on Page 4 of Exhibit "B", supra, is the covenant that states that she "is lawfully seised of the estate" and further warrants that she "will defend the title to the property against all claims and demands, subject to any encumbrances of record".  The Plaintiff believes and maintains that the encumbrances of record are deficient because no subsequent assignments or notices of any consequence to the chain of title were filed after Defendant CTX allegedly sold the alleged promissory note as part of a table-funded transaction, to parties unknown, that have as yet not perfected their alleged interests as mandated by Texas Government Code § 192.007.

19.     The Plaintiff, as the alleged Grantor of the encumbrance, further maintains that she has every right to bring a civil action to quiet title to the Property she claims is hers in fee simple title and that this right is given to her by the Warranty Deed (as found in Exhibit "A", supra) and that this civil action cannot be negated by any Defendant by Summary Judgment; and that the DOT therefore is binding upon all parties alleging a claim to the subject Property by extension or assignment; and thus any counterclaim of frivolity with the objective to dismiss the Plaintiff's claims and allegations should be considered moot. The principal basis for bringing a quiet title action is to serve all parties with notice to bring forth their claims or forever be barred from ever bringing a claim against the Property once this Court issues a decree quieting title in favor of the real party in interest; which the Plaintiff maintains is, the Plaintiff.

20.     The Plaintiff further claims that even if the alleged Defendants-claimants could validate their proof of claim to her Property, the foreclosure action commenced by the alleged claimants without proof of claim, would then distort her chain of title, affecting her ability to sell her Property and lawfully

convey the title (herein at issue as to marketability and insurability), which is part of her basis for bringing this civil action (due to the fact that she warranted in the DOT that she would defend title generally).

21.     The Plaintiff further maintains that the unperfected interests past the point of what is currently recorded in the real property records of Dallas County, Texas would render the Property's title defective so as to prevent any alleged claimant from mitigating its damages by liquidating said Property at a foreclosure sale, as the lien party of record (Defendant CTX, Exhibit "B", supra) does not appear to be a valid claimant; and therefore its agents and/or alleged assigns would then be improperly taking the Property for their own benefit and financial gain; and the Plaintiff maintains and alleges that Defendant CTX used none of its own money to fund the Plaintiff's loan, the funds came from somewhere else, unknown to Plaintiff.  Furthermore, if in fact, Defendant CTX was paid when it sold the DOT and alleged Note, then it has no standing to bring a foreclosure action (or sue on the note) because it would impose double liability on the Plaintiff. Moreover, due to Defendant CTX being paid in full with any assignment or transfer, the Vendor's Lien would have to be released because the original Lender was paid and the Warranty Deed (Exhibit "A", supra) clearly outlines that the Warranty Deed would be free of encumbrance once the Lender was paid.

22.     Without MERS conveying the original Lender's lienright, duly recording said conveyances in the real property records of Dallas County, Texas as mandated by Texas Government Code § 192.007, there is no official lienholder of record other than Defendant CTX. This Court must determine if such a sale or transfer occurred and whether Defendant CTX was only paid brokerage fees and commissions, or fully reimbursed for alleged monies it claimed to lend to the Plaintiff as part of the DOT, which would thus release the claim of Vendor's Lien on the Warranty Deed. No such release of lien has ever been filed in the real property records of Dallas County, Texas to indicate such.  If Defendant CTX was paid in full, then it should have filed a release and is negligent in failing to do so.

23.     The Plaintiff further maintains that no reasonable person would purchase her Property at sale (aside from this litigation) knowing that there are unrecorded, potential defects with the chain of title to the Property. Any Defendant-claimant that does not have a valid claim of lien that would attempt to sell the Property would then have to quiet title to the Property unto themselves, which would again, bring all of the foregoing issues to bear.

**B. Allegations as to the Actions of the Defendants**

24.     Based on the belief of the Plaintiff, Defendant BRICE is an unregistered debt collector as no records of such legitimate registration could be found within the records of the Secretary of State of Texas. Therefore, its actions to collect the alleged debt as demonstrated in this Complaint are *ultra vires*, in violation of 15 U.S.C. 1692a(6)(A)(B)(D).

25.     Based on the belief of the Plaintiff, Defendant MERS and its parent MERSCORP, which control an electronic database wherein the sale and transfer of the Plaintiff's promissory note (hereinafter "Note") is tracked, operate a website at http://www.mersinc.org, wherein borrowers can allegedly search for their "servicer" and "investor" to ascertain who might own their Note. One of the aspects of the MERS search system requires the MERS Identification Number (hereinafter "MIN") be typed into a provided blank space, along with the Borrowers Social Security Number and permissive checkbox to be checked in order to ascertain information which MERS itself disclaims for accuracy on its website. Therefore, none of the information or search results provided to the Plaintiff can be deemed reliable because the MERS member-subscriber can custom-tailor the information to fit anything they want to make fit.

26.     Based upon the belief of the Plaintiff, unlike credit repositories, which are regulated by the *Fair Credit Reporting Act* ("FCRA") under 15 U.S.C. § 1681 et seq, the MERS system is lax and loosely monitored; its data being maintained by its member-subscribers with no regulatory oversight. Thus,

handily and by design, the MERS system has the ability to obfuscate the true information as to the status of a potential lien claimant of the alleged Note. Therefore, its website is unreliable as to proof of claim. As to that end, the Plaintiff maintains and alleges that certain Defendants-claimants, if in fact they cannot prove they have either standing or capacity to act, have tainted and slandered her consumer credit files with false, misleading and derogatory information in negligent violation of the FCRA. Therefore, the Court must determine whether such an event has occurred and what statutory and/or punitive damages would be applicable.

27.      Defendant MERS is a Defendant in this proceeding because just such a MIN (18-digit number) #100015902142245784, as well as language making it a party thereto, appears on the DOT and that exact same number appears on the alleged Note so as to identify the alleged transfer and sale as MERS member-subscribers' clerks would input said data at any given moment in time. For the record, the Plaintiff never gave MERS any contractual right to possess her Social Security number and to make it a requisite to obtain unverified and accuracy-disclaimed information from its database. Such possession and distribution could be construed as identity theft of the Plaintiff's personal identifying information. The Plaintiff believes that this identifying information was given to MERS through the Form 1003 loan application that the Plaintiff filled out that was given to Defendant CTX in consideration of a mortgage loan. As a nominee, MERS is an agent with limited authority that can only be vested in the DOT to the extent with which that authority is applied. There is nothing expressed in writing in the DOT or any other document that gives MERS the right to possess the Plaintiff's personal identifying information; nor did any party to this proceeding ever disclose to the Plaintiff that her personal identifying information would be allowed to be distributed for use within the MERS electronic database system.

28.      Defendant MERS, by the statements made in the DOT, claims it has the same rights as the Trustee, with the abilities of the Lender, Defendant CTX, to hold legal title; to appoint Substitute Trustees

(in light of the conflicting language in Paragraph 24 of the DOT, p. 13 of 16 of the Security Instrument); to foreclose and sell the Property; and to release and reconvey the Property, as a "nominee" (undefined specifically), or "agent" for "the Lender or the Lender's successors and assigns" (as found on Pages 1 and 3 of the DOT). MERS further claims to be the Beneficiary of the DOT, in what the Plaintiff believes was necessary to create a "static condition" wherein MERS members would never have to record subsequent assignments and conveyances to perfect their interests, which has become one of the fundamental issues in the class action *Dallas County v. MERSCORP, Inc.*, supra. Had MERS not been a party to the DOT, MERS's involvement, or the lack thereof, herein would not be at issue.

29.     Based upon the belief of the Plaintiff, the intent of the creators and founders of MERS was to set up an electronic database that would track the sale and transfer of mortgage notes in various special purpose vehicles that were set up as Real Estate Mortgage Investment Conduit (REMIC) Trusts on Wall Street.  Non-Defendant Fannie Mae has REMIC trusts listed on Publication 938 at http://www.irs.gov in ".pdf" form that indicate which trust entities enjoy tax-exempt status as Real Estate Mortgage Investment Conduits.  Thus, any alleged trust that would claim a valid interest in the Property, of which none have been filed for record in the real property records of Dallas County, Texas, would have to show that the conveyance into said REMIC was proper and timely, in accordance with the pooling and servicing agreement (hereinafter "PSA"), which is governed under New York Trust Law as well as mandated under 17 CFR 210, 228, 229 et seq. as well as by Congressional oversight regulations promulgated for such circumstances.  Therefore, the Plaintiff claims the intent for using MERS was to securitize the alleged Note; otherwise, why utilize MERS?  The Court will have to determine whether the alleged Note was securitized and why there was no proper recordation in the real property records of Dallas County, Texas to reflect proper transfer and assignment.

30.     As previously referenced, under the Paragraph on the DOT (at p. 3) entitled TRANSFER

OF RIGHTS IN THE PROPERTY, the DOT recites that MERS is the nominee for the Lender's

successors and assigns, **and the successors and assigns of MERS** (emphasis added, as this clause is

NOT found in the definitions on Page 2 of the DOT under Definition "E", as recited.  The language is

vague and ambiguous (and undefined) as to WHO the "successors and assigns of MERS" are; another

reason why **these** Defendants-claimants must be noticed by publication as part of this proceeding to

perfect service of process against all mesne assignees who purport to be "the successors and assigns of

MERS".

31.     To date, the only Trustees that are listed are the original Trustees (John L. Matthews or

Timothy M. Bartosh) named in the DOT. Coincidentally, the Plaintiff notices and alleges to this Court

that the original Trustees of record appear to be listed in the DOT as being at the same address as the

original Lender of record and in fact the original Trustees of record are active corporate officers of the

original Lender of record Defendant CTX. The Plaintiff maintains and asserts that this represents a

conflict of interest as to the original Trustees fiduciary duty due to the original Trustee's immediate and

official involvement with the original Lender of record.  These original trustees are NOT neutral parties to

the transaction and this Court must decide if indeed there exists a conflict of interest and whether this

nullifies any agreement set forth and allegedly executed by the Plaintiff wherein the Trustees are in direct

conflict with the intent of the Texas Deed of Trust Act. The Plaintiff further maintains and alleges that the

Lender cannot be the Trustee; and in this instance, Plaintiff challenges the ability of the Lender's officers

to be able to maintain fair and impartial neutrality.

32.     To date, there has been no officially-recorded Appointment of a Substitute Trustee in the

official real property records of Dallas County, Texas as alleged by Defendant BRICE in its numerous

written communications with the Plaintiff as mandated by Texas Government Code § 192.007.

33.     To date, there have been no conveyances of the Plaintiff's alleged DOT or Note to any subsequent party recorded in the official real property records of Dallas County, Texas as mandated by Texas Government Code § 192.007.  Plaintiff alleges that no bona fide Lender could duly appoint a Substitute Trustee to act on its behalf.  Defendant MERS certainly did not appoint anyone and neither did Defendant CTX.

34.     To date, the Plaintiff maintains that even if a foreclosure action against her Property were to be commenced, it would logically have to be by the original Trustees named in Paragraph 31 of this Complaint, as holding title in trust; which is in conflict with the language of MERS's claimed authority on Page 3 of the DOT under TRANSFER OF RIGHTS IN THE PROPERTY. Such a foreclosure action was not commenced here.

35.     To date, the Plaintiff maintains that the most recent Notice of Acceleration and Notice of Trustee's Sale that she received from Defendant BRICE, dated June 14, 2011, was also never duly recorded in the real property records of Dallas County, Texas as mandated by Texas Government Code § 192.007.

36.     The Plaintiff claims that the most recent written communication she received from Defendant BRICE's agent, Defendant SELIM TAHERZADEH (hereinafter "Taherzadeh"), was improper because the real party in interest (i.e., the agent's principal) had no recorded assignments or conveyances to it in the official real property records of Dallas County, Texas as mandated by Texas Government Code § 192.007. Therefore, Defendants BRICE and its agent TAHERZADEH were acting only in the capacity of a debt collector, as stated in the language in the June 14, 2011 communication that these Defendants sent to the Plaintiff, to wit:

**"LEGAL PRECEDENT IS NOT CLEAR AS TO WHETHER THE SENDING OF THIS LETTER MAKES US A DEBT COLLECTOR. TO THE EXTENT THAT IT DOES, WE ARE PLEASED TO ADVISE YOU THAT THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED**

**FOR THAT PURPOSE."**

Thus, it appears that Defendants BRICE and TAHERZADEH don't know whether they were acting in the capacity of a debt collector (or not), even though they are using language in their written communication that falls under the purview of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. 1692 et seq., a copy of their June 14, 2011 communication is attached hereto as Exhibit "C" and incorporated herein by reference.

37.     The Plaintiff maintains that without the proper Appointment of Substitute Trustee by a bona fide Lender who can prove that it is a real party in interest, the actions of Defendants BRICE and TAHERZADEH were and are *ultra vires*.  By declaratory ruling, this Court must then determine whether these Defendants had the authority to act as either debt collectors or Substitute Trustees based on the evidence (or the lack thereof) NOT found in the official real property records of Dallas County, Texas as well as the content of the written communications sent to the Plaintiff by Defendant TAHERZADEH, acting as agent for Defendant BRICE.

38.     Further, Defendant TAHERZADEH's signature on the numerous documents sent to the Plaintiff, as well as evidenced in other numerous documents actually recorded in various public records in the State of Texas, appear to widely vary in form; as found with the signature issues of a "Linda Green", an alleged robosigner, whose behavior and involvement with DOCX, a known third-party document manufacturer, located in Alpharetta, Georgia, who was exposed on CBS News *60 Minutes*, April 3, 2011 broadcast by reporter Scott Pelley.  The Plaintiff believes and asserts that other individuals have been surrogate signing Defendant TAHERZADEH's signature; samples of his numerous signatures is provided to the Court in Exhibit "D", attached hereto and incorporated herein by reference; in many of the samples he uses different alleged "authorities" to sign in and on behalf of other claimants.

39.   This Court must determine whether the alleged signatures of Defendant TAHERZADEH are in fact his own. Plaintiff alleges that this Defendant is liable for statutory damages under 15 U.S.C. 1692e(5) and (10), as cited in the debt collection case of *Clomon v. Jackson*, 988 F.2d 1314, wherein the defendant attorney (in that case) was found to be liable for sending out written communication which he not only was not privy to (due to machine-signed signatures of his name on form debt collection letters), but was also actually not aware of (the attorney never actually reviewed the debt collection cases and had no pertinent knowledge of the contents of the letters or cases) and therefore could not threaten legal action that he never intended to take.   In the instance case, the Plaintiff believes and alleges that Defendants BRICE and TAHERZADEH were part of a document manufacturing scheme to generate form letters, signing them with Defendant TAHERZADEH's signature without his actual knowledge.

40.   Further, *Clomon*, supra, expanded the interpretation of whether debt collectors should have proper authority to (in fact) collect debts. This Court must determine whether the authority of these Defendants (BRICE and TAHERZADEH) was valid and proper, in light of the vague and ambiguous language cited in the June 4, 2011 letter from these Defendants to the Plaintiff.

41.   The Plaintiff also alleges that Defendant MERS and its "Certifying Officers" never assigned or conveyed the Plaintiff's Property to anyone (by conveying the DOT, which it has only that authority to convey, as it does not have an interest in the Note); and in doing so, would have effectively split the deed of trust from the Note, rendering the Note unsecured, as cited in *McCarthy v. Bank of America, N.A. et al*, Civil Action No. 4:11-CV-356-A, currently pending in this Court, i.e., the U. S. District Court for the Northern District of Texas, Fort Worth Division; which on December 22, 2011 denied all of the Defendant's motions dismiss, citing *Carpenter v. Longan*, 83 U.S. 271, 274 (1873). This cause of action is also ongoing in this federal district court.

42.     As the actions of MERS Certifying Officers were non-existent in this case, the Plaintiff maintains and alleges that MERS and its agents were negligent in acting as a "nominee" for the Lender and also failed to adhere to the mandate of Texas Government Code at § 192.007 in making sure that all subsequent assignments and other documentation affecting the original DOT be recorded.

43.     The Plaintiff also maintains on belief and alleges that it is not uncommon for MERS and its agent(s) to assign, convey, appoint and act AFTER the Substitute Trustee has already commenced a foreclosure action, *ultra vires*. It is also not uncommon for the Substitute Trustees to appoint themselves, wearing the "MERS hat", as Kings County, New York Justice Arthur Schack, found in many cases and dubbed a "milliner's delight." Justice Schack has called a number of alleged robosignors into question and ordered them to produce affidavits of employment, under penalty of perjury, which thus far has yielded no affidavits as none of the alleged robosignors wish to serve potential prison time for criminal perjury.

## C. As to the Alleged Claimants as Parties in Interest

44.     As a result of Plaintiff's First Request for Production, Defendant BRICE in Response to Request No. 29 produced (and thereby authenticated) a written communication to the Plaintiff dated January 25, 2011, which appears to have been issued by Defendant TAHERZADEH, the communication asserts that Defendant BRICE represents Washington Mutual Bank, F.A. (which by January 25, 2011, was already defunct and in the receivership of the FDIC). The Plaintiff contends and alleges that Defendant BRICE and its agent Defendant TAHERZADEH, misrepresented themselves to the Plaintiff, in violation of 15 U.S.C. 1692e(1)(A) and (10). The Court (or the jury) must determine whether this misrepresentation occurred and whether statutory damages are applicable. A copy of this communication is attached hereto as Exhibit "E" and incorporated herein by reference.

45.     As a result of Plaintiff's First Request for Production, Defendant BRICE in Response to Request No. 29 also produced (and thereby authenticated) a written communication to the Plaintiff dated February 4, 2011, ten (10) days AFTER the previous letter (Exhibit "E", supra) was issued, which also appears to have been issued by Defendant TAHERZADEH, the communication asserts that Defendant BRICE represents JPMorgan Chase as Successor-In-Interest to Washington Mutual Bank, F.A. The Plaintiff contends and alleges that Defendant BRICE and its agent Defendant TAHERZADEH, misrepresented themselves to the Plaintiff, in violation of 15 U.S.C. 1692e(1)(A) and (10). The Court (or the jury) must determine whether this misrepresentation occurred and whether statutory damages are applicable. A copy of this communication is attached hereto as Exhibit "F" and incorporated herein by reference. This document cites Washington Mutual Bank's old address in Jacksonville, Florida. How is it that within ten (10) days, AFTER Washington Mutual Bank F.A. was already defunct, that Defendants BRICE and TAHERZADEH could change who they are representing when the FDIC's action as receiver occurred well before that time (unless the "right hand didn't know what the left hand was doing")?

46.     Furthermore, in the correspondence received and attached as Exhibit "C", i.e., the Notice of Acceleration and Notice of Trustee's Sale (which is not recorded in the Dallas County real property records), the Deed of Trust information in Exhibit "C" declares that the date of the DOT was "03/30/2004", whereas Exhibit "F" declares that the DOT date was "03/31/2011". Which date is a misrepresentation?

47.     The Plaintiff further contends and alleges that there was no Notary Public present at the closing which took place on March 30, 2004 when the DOT was allegedly signed; and further alleges that the Notary (Kristy Halpenny) postdated the DOT to the 31st day of March, 2004 date using a separate page of the DOT form which does not contain the signature being notarized. Furthermore, the notary has stated that she did not keep a logbook as required by the Texas Notary Statutes. This Court (or a jury)

must determine whether the notary's failure to adhere to the Texas Notary Laws constitutes a violation and whether her failure to witness the Plaintiff's alleged signature and keep a record of the Plaintiff's signature in her log book would cause the DOT to be nullified and thus voidable by this Court by decree.

48.    Upon a search of the MERS database, the unverified and disclaimed information states that JPMorgan Chase Bank, N.A. is the "Servicer" and that Federal National Mortgage Association (hereinafter "Fannie Mae", a government-sponsored entity, hereinafter "GSE") is the "investor". This is the only evidence that now brings Fannie Mae into the case, as Defendants BRICE and TAHERZADEH never alleged that Fannie Mae was ever involved or was a party-in-interest.

49.    There is no recorded assignment to Fannie Mae by Defendant CTX or any other Defendant-claimant in the real property records of Dallas County, Texas in violation of Texas Government Code § 192.007.

50.    As a result of Plaintiff's First Request for Production, Defendant BRICE in Response to Request No. 29 also produced (and thereby authenticated) a written communication to the Plaintiff dated February 23, 2011, which also appears to have been issued by Defendant TAHERZADEH, the communication asserts that Defendant BRICE represents Washington Mutual Bank, F.A. (which by February 23, 2011, was already defunct and in the receivership of the FDIC). The Plaintiff contends and alleges that Defendant BRICE and its agent Defendant TAHERZADEH, again misrepresented themselves to the Plaintiff, in violation of 15 U.S.C. 1692e(1)(A) and (10). The Court (or the jury) must determine whether this misrepresentation occurred and whether statutory damages are applicable. A copy of this communication is attached hereto as Exhibit "G" and incorporated herein by reference.

51.    Again, based on the previous exhibits, how is it that Defendant BRICE and its agent Defendant TAHERZADEH, can claim on January 25, 2011 (Exhibit "E", supra) that it represents Washington Mutual, then can claim on February 4, 2011 (Exhibit "F", supra) that it represents JPMorgan

Chase Bank, N.A., and then turn around on February 23, 2011 (Exhibit "G", supra) and send correspondence indicating that it represents "Washington Mutual" without violating the FDCPA?

52.     Moreover, as a result of Plaintiff's First Request for Production, Defendant BRICE in Response to Request No. 29 also produced (and thereby authenticated) a written communication to the Plaintiff's then-counsel Mark T. Mitchell, dated February 23, 2011, which appears to have also been issued by Defendant TAHERZADEH, the communication (in part) asserts that the alleged Note was in the possession of Defendant BRICE, and a copy of the alleged Note that was enclosed as part of the correspondence had no assignment or indorsement. A copy of this alleged copy of the alleged Note is attached hereto as Exhibit "H" and incorporated by reference herein. How is it that this copy of the alleged Note reflects no assignment or conveyance, when other correspondence generated by these same Defendants, a copy of which is attached hereto as Exhibit "I" and incorporated by reference herein, as part of the document production response tendered by Defendant BRICE shows an alleged promissory Note containing an indorsement in blank from CTX Mortgage Company LLC on what appears to be a otherwise blank separate page, which is not a properly attached "Note Allonge" affixed to the alleged promissory Note in accordance with the requirements of the Uniform Commercial Code.

53.     The Plaintiff contends and alleges that the foregoing alleged Note Allonge was an attempt by a Defendant-claimant to sell and transfer the alleged Note to unknown parties whose interests were never recorded in the real property records of Dallas County, Texas; and further alleges that Defendant CTX, upon indorsing the alleged Note (if in fact the indorsement is held by this Court to be legitimate), was negligent in failing to release the Vendor's Lien after it had been paid.

54.     Further, the alleged Note Allonge is undated and does not comport to the conditions required under the Uniform Commercial Code as to indorsements being placed on the signing page (where the Plaintiff's signature allegedly appears), below the Plaintiff's alleged signature. Attaching the

indorsement on a separate sheet of paper is a "red flag" indicator of document manufacturing and the Plaintiff prays that the Court (and the jury) examine the alleged original Note and any "attachments" to verify its authenticity; and in the event the alleged original Note cannot be provided, to rule that the attempted Allonge is invalid as to its authenticity and representative conveyance and to further rule that it does not comport to any enforcement authority given to any party holding it under U.C.C. § 3-102.

55.     The Plaintiff further alleges that if the alleged Note was indeed securitized, which has yet to be proven by any of the alleged claimants herein or by any other outside parties (mesne assignees that may have an interest in the Property) thereto, then an assignment would have had to have been recorded to satisfy the terms and conditions of the PSA; thus, the alleged Note would have been converted into a Security and would no longer be a negotiable instrument under U.C.C. §3-102.  It would be non-negotiable under certain portions of U.C.C. Articles 8 and 9, respectively.

56.     Since no assignment was recorded, the Plaintiff contends and alleges that the alleged Note could NOT have been securitized because it was NOT properly transferred to the Trust pool or to any other entity for that matter that could come forward to prove a valid claim of lien.

57.     The FDIC has previously refused, as receiver for Washington Mutual Bank, F.A., to release a "schedule" of loans that were transferred to JPMorgan Chase Bank, N.A. and a motion was filed against the FDIC for civil contempt in a show cause hearing for failure to provide such in *In Re Guyrec*, Case No. 09-14497-MJ, U.S. Bkrpt Ct., C.Dist. Cal., Riverside Div. on February 15, 2012.

58.     Further, the Plaintiff incorporates by reference herein the sworn deposition testimony of Lawrence Nardi, who testified under oath BOTH as an Operations Unit Manager and Mortgage Officer of JPMorgan Chase Bank, N.A. and also under oath as an officer of Washington Mutual Bank in the case of *JPMorgan Chase Bank, N.A. as Successor-In-Interest to Washington Mutual Bank, F.A. vs. Sherone P. Waisome*, Case No. 2009-CA-005717, in the Fifth Judicial Circuit Court of Lake County, Florida, that

there is no schedule of what loans were purchased, no assignments, no allonges, no endorsements; nothing that transferred ownership of the loans from Washington Mutual Bank, F.A. to JPMorgan Chase Bank, N.A. This sworn testimony was given on May 9, 2012.

59.     The Plaintiff maintains and asserts that the "prior testimony" of an officer of the Defendant JPMorgan Chase Bank, N.A. is admissible evidence in the Plaintiff's case under Rule 32 of the Federal Rules of Civil Procedure.   Specifically, the 330-page deposition transcript, which Plaintiff's special counsel will make available to all Defendants-claimants in this action through discovery (in .pdf format), excerpts of which are attached hereto as Exhibit "J" and incorporated by reference herein, establishes that Defendant JPMorgan Chase Bank, N.A. has admitted that it can not prove ownership of the alleged Note.

60.     Thus, the Plaintiff maintains and alleges that as evidenced by the sworn deposition testimony of Lawrence Nardi, the Defendant JPMorgan Chase Bank, N.A. has "admitted" under oath, that it does not have any proof that it purchased or "owns" the alleged Note, nor does it have any proof that it was assigned the alleged Note or DOT, therefore it does not have the right to enforce the alleged Note, and lacks standing to pursue foreclosure or obtain a summary judgment in favor of JPMorgan Chase Bank, N.A.

61.     The Plaintiff maintains and alleges that without proof of ownership of the alleged Note that none of the Defendants-claimants have any authority to foreclose on her real Property. The United States Supreme Court clearly explained approximately 140 years ago that: "The note and mortgage [deed of trust] are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." Carpenter v. Longan, 83 U.S. 271, 274 (1872) (footnote omitted). This basic proposition has been reaffirmed often. See, Baldwin v. State of Mo., 281 U.S. 586, 596 (1930) (Stone, J., concurring); National Live Stock Bank v. First Nat'l Bank, 203 U.S. 296, 306 (1906); Kirby Lumber Co. v. Williams, 230 F.2d 330, 336 (5th Cir. 1956); In re

Veal, 450 B.R. 897, 916-17 (B.A.P. 9th Cir. 2011); In re Vargas, 396 B.R. 511, 516 (Bankr. C.D. Cal. 2008); In re Leisure Time Sports. Inc., 194 B.R. 859, 861 (B.A.P. 9th Cir. 1996); Bellistri v. Ocwen Loan Servicing, LLC, 284 S.W.3d 619, 623 (Mo. Ct. App. E.D. 2009).

62.     Furthermore, any entity or individual that claims to own the mortgage/deed of trust but does not own the Note cannot foreclose.  This extends to the individuals, entities or agents of those alleged claimants; thus, if the alleged claimant has no right to foreclose, neither can the alleged authorized agent of that alleged claimant.  Any acts of the agents that were *ultra vires* in an attempt to foreclose on the Plaintiff's Property, namely, Defendants BRICE and its representative agent Defendant TAHERZADEH, must each bear the responsibility for their violation(s) of the FDCPA.

63.     These alleged agents knew or should have known they were not acting in an authorized capacity, yet held themselves out as if they were authorized to do so in an attempt to act on behalf of an alleged claimant that has yet to prove (and has admitted that it can not prove) the validity of its claim.

64.     Further, by not being able to prove the validity of its claim, the alleged claimant Defendants herein lack standing to foreclose on the Plaintiff's Property and also lack the authority to place or report derogatory information on the Plaintiff's consumer credit files.

65.     Based on the intent of the users of the MERS electronic database to securitize the alleged Note, the Plaintiff maintains that, according to Paragraph 20 on Pages 11 and 12 of the DOT as found in Exhibit "B" supra, "the Note or a partial interest in the Note (together with the Security Instrument)" could never have been properly conveyed by MERS because MERS did not have an interest in the Note, only in the DOT, where its language appears. Thus, if the Note were fractionalized and a portion sold to unknown parties, said transfers would then pose double liability upon the Plaintiff for payment of the Note to multiple parties as mesne assignees.

## V. FIRST CAUSE OF ACTION – QUIET TITLE

66.     The Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

67.     The Plaintiff claims herein that the chain of title to her Property is clouded due to the lack of recorded assignments that would otherwise prove who has proper ownership of an alleged promissory note that the Defendants, jointly and severally, seek to enforce.  The recording of such documents is mandated by the Texas Government Code at § 192.007.

68.     The Plaintiff further claims that Defendants JPMorgan Chase Bank, N.A. as Successor-in-Interest to Washington Mutual Bank, F.A.; JPMorgan Chase Bank, N.A.; and MERS as nominee for Defendant CTX and its successors and assigns knew or should have known that they were required to record their interests in the subject Property in the land records of the Dallas County, Texas courthouse in order to maintain a proper chain of title in compliance with the foregoing Government Code, supra.

69.     Without documented proof of the foregoing, the Plaintiff claims the title to her Property is clouded and is now unmarketable and uninsurable and cannot be conveyed to any reasonable person; formally disclosing to this Court and to the world that the title to her Property contains defects.

70.     Therefore, the Plaintiff seeks a decree from this Court quieting title to her Property with title fully vested in the Plaintiff, free from all liens and encumbrances.

## VI.  SECOND CAUSE OF ACTION – DECLARATORY RELIEF

71.     Plaintiff re-alleges and incorporates by reference preceding paragraphs 1-69 as though fully set forth herein.

72.     An actual controversy has arisen and now exists between Plaintiff and the Defendants, jointly and/or singularly regarding their respective rights and duties, in that Plaintiff contends that none of the parties bringing a claim against them and their rights to hold superior title to Property have proven

**PLAINTIFF'S SECOND AMENDED COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

their interests. No one has come forward to actually prove ownership of the alleged promissory Note as evidence of their interest in the subject Property.

73.     As a result of Defendants' actions, Plaintiff now seeks declaratory relief and claims that Defendant's Notice of Trustee's sale is invalid because there are no recorded interests, notices of appointment of substitute trustee, assignments or any other recorded claims that would lend any force and effect by and through operation of law to allow the commencement of a foreclosure action against the Plaintiff's Property, let alone the authority to accelerate the alleged Note and demand payment in full.

74.     The Plaintiff further seeks declaratory rulings by this Court (or by jury) as to the rights and interests of all claimants, known or unknown, as it deems just and proper, and to issue a decree forthwith.

75.     Further, the Plaintiff seeks declaratory rulings by this Court (or by jury) as to statutory violations by the various Defendants as applicable to the Fair Debt Collection Practices Act; and as to whether punitive damages for negligence or willful violations are applicable and as such, declare by ruling forthwith.

76.     Further, the Plaintiff seeks declaratory rulings by this Court (or by jury) as to statutory violations by the various Defendants as applicable to the Fair Credit Reporting Act; and as to whether punitive damages for negligence or willful violations are applicable and as such, declare by ruling forthwith.

77.     Further, the Plaintiff seeks declaratory rulings by this Court (or by jury) as to the following issues for which the Plaintiff prays this Court must determine:

(a.) As to the validity of the DOT because the Lender's actual officers are acting in dual roles as Trustees in the DOT and as such, would thus represent a conflict of interest that voids the DOT; and to issue a decree forthwith;

(b.) As to whether the Defendants, known or unknown, as parties to this proceeding, did in fact violate the mandates as set forth in the Texas Government Code at § 192.007 by failing to record and perfect all interests, claims and notices as required under the Code; and to issue a decree forthwith;

(c.) As to the Plaintiff's ability and legal right to bring an action to quiet title based on the language in the DOT that covenants that she is lawfully seised of the estate with the right to defend title against all claims, subject to any encumbrances of record; and to issue a decree forthwith;

(d.) As to Defendant JPMorgan Chase Bank, N.A.'s right, by and through its alleged agents, not of public record, to accelerate the alleged Note and commence foreclosure proceedings against the Plaintiff's Property; and to issue a decree forthwith;

(e.) As to the marketability and insurability of the title to the Plaintiff's Property, which the Plaintiff maintains has been tainted by numerous defects due to the Defendants', jointly and severally, negligence to comply with the Texas Government Code at § 192.007; and to issue a decree forthwith;

(f.) As to the validity of the authority of Defendant BRICE and its agent Defendant TAHERZADEH to act as a debt collector, or in the alternative, to act as a Substitute Trustee with no recorded proof of Appointment in the real property records of Dallas County, Texas; and to issue a decree forthwith;

(g.) As to the validity of the assignment/indorsement in blank that the Plaintiff claims is improperly supplied and affixed to the alleged Note; and as to whether Defendant CTX actually conveyed the Note to anyone; and to issue a decree forthwith;

(h.) As to the validity of any claimant coming forth proclaiming itself as an alleged

Noteholder and as to whether the conveyance was just and proper; and to issue a decree forthwith;

(i.) In the alternative, as to the validity of the alleged conveyance, if this Court determines the indorsement to be in compliance with the Uniform Commercial Code, to determine whether this releases the Vendor's Lien from the Warranty Deed; and as such, to issue a decree forthwith;

(j.) As to the validity of Defendant MERS and its parent MERSCORP (as the controlling entity of MERS) and its rights to be held liable for failing to monitor the actions of its member-subscribers that participated in the chain of custody of the alleged Note in compliance with the Texas Government Code at § 192.007; and to issue a decree forthwith;

(k.) As to the validity of Defendants MERS and MERSCORP's right to possess the Plaintiff's personal identifying information by whatever authority vested as to its application of the limited agency role of "nominee" and its uses in authenticating the release of the Plaintiff's (as Borrower's) information to her and any other party participating in the MERS system; and to issue a decree forthwith;

(l.) As to whether the actions of Defendant TAHERZADEH violated the legal standards as set forth in *Clomon v. Jackson* and whether he should be held liable for violation of those standards and as to what extent that liability should apply; and to issue a decree forthwith;

(m.) As to the matter of whether the alleged Note was securitized; was split from the DOT as part of the MERS business model (bifurcated) and as a result

of this bifurcation, whether the Note is now a negotiable instrument under UCC

§ 3-102 et seq or whether the Note is an unsecured Note and non-negotiable as

a security under UCC Articles 8 and 9; and to issue a decree forthwith; and

(n.) As to the actual value of the alleged Note in the possession of any claimed

alleged Noteholder and whether the Note was sold in full or fractionalized and

sold in part; to determine the real parties in interest; and to issue a decree forthwith.

## VI.   THIRD CAUSE OF ACTION – VIOLATIONS OF FDCPA
### 15 U.S.C. 1692 et seq
**15 U.S.C. 1692e, e(4), e(5), e(7), e(10) and e(11); 15 U.S.C. 1692f; 15 U.S.C. 1692g**
**(Against Defendants BRICE and TAHERZADEH, jointly and severally)**

78.     Plaintiff re-alleges and incorporates by reference preceding paragraphs 1-69 as though

fully set forth herein.

79.     The facts herein alleged constitute a false and misleading attempt by the Defendants to

collect a debt that they did not have the authority to collect, in violation of 15 U.S.C. 1692e.

80.     The facts herein alleged constitute an unfair practice, and is in violation of 15 U.S.C.

1692f.

81.     That on numerous occasions, as referenced in the exhibits attached hereto, the Defendants

mailed the Plaintiff letters for the collection of a debt using vague and ambiguous language claiming that

their collection efforts were legally undetermined, thus failing to comply with the statutory language that

is mandated by the FDCPA:

(a.) Specifically, the letter sent to the Plaintiff in Exhibit "C", dated June 14, 2011, fails to provide

the statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity

of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector, in violation

of 15 U.S.C. 1692g and e(10).

(b.) Specifically, the letter sent to the Plaintiff in Exhibit "C", dated June 14, 2011, fails to provide the statement that if the consumer notifies the debt collector in writing (within the thirty day notice period) that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector, in violation of 15 U.S.C. 1692g and e(10).

(c.) That similar notices sent to the Plaintiff by these Defendants, offered as exhibits in this proceeding, failed to contain similar language as noted in subparagraphs (a.) and (b.) herein; and should constitute multiple violations of the FDCPA for every similar notice sent to the Plaintiff herein.

82.     The facts herein, including but not limited to the threat of foreclosure and sale, constitute a violation of 15 U.S.C. 1692e, e(7), e(4) and e(5).

83.     That all said acts were done *ultra vires* by these Defendants and were done intentionally, willfully and maliciously (outside of the purview and authority of the Plaintiff's DOT).

WHEREFORE, as to this count, the Plaintiff respectfully requests that judgment be entered in her favor and against Defendants for:

(a.) Statutory damages pursuant to 15 U.S.C. 1692k;

(b.) A right to a trial by jury;

(c.) Costs and reasonable attorneys fee pursuant to 15 U.S.C. 1692k;

(d.) Such other and further relief as to this Court deems just and proper.

### VIII. FOURTH CAUSE OF ACTION – VIOLATIONS OF FCRA
### 15 U.S.C. § 1681 et seq
### 15 U.S.C. § 1681s-2(a)(1)(A)
### (Against Defendant JPMORGAN CHASE BANK, N.A.)

84.     Plaintiff re-alleges and incorporates by reference preceding paragraphs 1-69 as though fully set forth herein.

**PLAINTIFF'S SECOND AMENDED COMPLAINT**
**AND DEMAND FOR JURY TRIAL**                                                28

85.     By and through the acts of this Defendant and by and through (by extension) of its agents and debt collectors, this Defendant, lacking standing to pursue a valid claim against the Plaintiff's Property, therein did cause to be placed false and derogatory information upon the Plaintiff's consumer credit bureau reports when it knew or should have known that it was not the holder and owner of the Plaintiff's Note in violation of 15 U.S.C. § 1681s-2(a)(1)(A).

86.     Said negligent acts of this Defendant have been ongoing and continue to occur, which are slandering the Plaintiff's credit reports, negatively impacting her credit scores, including but not limited to effectively preventing the Plaintiff from seeking any kind of financial remedy to mitigate her damages relative to this proceeding.

WHEREFORE, as to this count, the Plaintiff respectfully requests that judgment be entered in her favor and against this Defendant for:

(a.) Statutory damages pursuant to 15 U.S.C. 1681o;

(b.) A right to a trial by jury;

(c.) Costs and reasonable attorneys fee pursuant to 15 U.S.C. 1681o;

(d.) Such other and further relief as to this Court deems just and proper.

### IX. FIFTH CAUSE OF ACTION – NEGLIGENCE
### (Against All Defendants)

87.     Plaintiff re-alleges and incorporates by reference preceding paragraphs 1-69 as though fully set forth herein.

88.     The Plaintiff contends and alleges that the alleged Substitute Trustee herein, namely, Defendant BRICE and its agent TAHERZADEH failed to exercise due diligence to first determine whether their actions as Substitute Trustee were appropriate, and failing so to do, were negligent in their alleged duty to Plaintiff and thus acted *ultra vires*, outside the scope of the Texas Property Code at § 51.0075(b).

PLAINTIFF'S SECOND AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL                                                                                  29

89.     The Plaintiff contends and alleges Defendants MERS, MERSCORP and JPMORGAN CHASE BANK, N.A. were negligent in failing to comply with the mandates of the Texas Government Code at § 192.007 in recording and perfecting their alleged claims of lien to establish a proper chain of title to protect the marketability and insurability of the Plaintiff's title, and failing so to do, were negligent in their duty as mandated by said Code.

90.     The Plaintiff contends and alleges that Defendant CTX was negligent in failing to appoint a neutral and impartial original Trustee and was negligent in allowing its active officers to hold title to the Plaintiff's Property, in trust, with power of sale.  In the event the actual claimant-in-interest could not be established, Defendant CTX never had the the ability to act fairly and with impartiality towards the Plaintiff in the event of a default because the Lender (CTX) could not also be the Trustee (CTX officers) because the Lender (CTX) IS a debt collector, whereas the Trustee (CTX officers), by virtue of Texas Property Code § 51.0075(b), can NOT be a debt collector.  Therefore, Defendant CTX was negligent in not appointing a proper trustee to hold the Property in trust in compliance with the Texas Deed of Trust Act.

91.     As a result of the foregoing, the Plaintiff contends and alleges that these Defendants' actions were *ultra vires* and thus of no force and effect; were devoid of due diligence; and created issues with her chain of title as to its marketability and insurability.

WHEREFORE, as to this count, the Plaintiff seeks exemplary and punitive damages for said negligent acts from this Court that are permitted by law against these Defendants as this Court (or by jury) would determine.

## X. SIXTH CAUSE OF ACTION - INJUNCTIVE RELIEF
### (Against All Defendants)

92.     Plaintiff re-alleges and incorporates by reference preceding paragraphs 1-69 as though fully set forth herein.

93.    Defendants and each of them have engaged in a course of conduct that has resulted in the creation of numerous issues with the chain of title to the Plaintiff's property at 9110 Esplanade Drive, Dallas, Texas 75220, regarding the attempted conveyances of the Plaintiff's DOT and Note to third parties that may or may not have a valid claim of interest therein.

94.    The Plaintiff is informed and believes, and on the basis of such information and belief alleges, that her Property is the subject of an improper foreclosure proceeding by said known Defendants herein.

95.  Plaintiff has a clear equitable and legal right in the Property, as demonstrated by the facts set forth herein, with title vested solely in her so that she may continue her equitable and legal rights and enjoyment of the Property.

96.  If injunctive relief in the form of a restraining order and injunction does not issue, the Plaintiff will suffer actual and substantial injury of the loss of her Property to a party or parties not entitled under any legal theory to any rights in the property.

97.  Wherein the Plaintiff's chain of title is affected there can be no summary judgment against her, as "a petition which sets forth with sufficient clearness the facts constituting the cause of action, which facts, if true, would entitle Plaintiff to relief, is sufficient to state a cause of action ..." *Titus v. Tolle*, 223 SW 885 (1920).

98.  Therefore, the Plaintiff requests that:

(a.) any or all pending foreclosure sales be vacated or cancelled;

(b.) the title to her Property be restored in her and that the Defendants be immediately enjoined from further activities, including but not limited to foreclosing and selling the Plaintiff's Property at any trustee's sale now or in the future; and

(c.) the Defendants be enjoined from attempting to transfer and sell the alleged note to any

third-party creditor for the purpose of pursuing debt collection activities against the Plaintiff.

## XI.  REQUEST FOR TRIAL BY JURY

99.     Plaintiff hereby requests a trial by jury.

## XII.  PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendants be cited

to appear and answer herein and that upon final hearing, this Court grant all relief as set forth in this

Compliant, including but not limited to all economic and consequential damages; exemplary damages;

attorney's fees; costs of court; as well as such other and further relief, at law or in equity, to which

Plaintiff may show herself to be justly entitled.


                                Respectfully submitted,

                                */s/ Carl D. Hughes, Jr.*
                                Carl D. Hughes, Jr.
                                Texas State Bar No. 10209000

                                **CARL HUGHES, P.C.**
                                P. O. Box 610326
                                Dallas, Texas 75261-0326
                                Telephone: (214) 761-9342
                                Facsimile: 1-888-247-1127
                                Email: carlhughes@aol.com

                                **SPECIAL COUNSEL FOR PLAINTIFF**

## AFFIDAVIT

STATE OF TEXAS        )
                                ) ss.

COUNTY OF DALLAS     )

Before me the undersigned authority on this day personally appeared **Zan E. Green**, who being duly sworn stated:

"I am the Plaintiff in the above-styled civil action. I have read the foregoing Plaintiff's Second Amended Complaint and Jury Demand and swear based upon my personal knowledge, and upon information that gives me a good faith belief, that all the allegations of fact contained therein are true and correct."

**Zan E. Green**

SUBSCRIBED AND SWORN TO BEFORE ME on the _29_ day of October 2012, to certify which Witness my hand and official seal.

Notary Public in and for the State of Texas



ASHLEY SHEPPERD FAYE
My Commission Expires
May 2, 2016

**PLAINTIFF'S SECOND AMENDED COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was served upon all attorney of record, via the clerk for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court, on this the 29th day of October 2012:

| | |
|---|---|
| Gregg D. Stevens, Esq. | David Romness, Esq. |
| McGlinchey Stafford, PLLC | Brice, Vander Linden & Wernick, P.C. |
| 2711 N. Haskell Avenue | 9441 LBJ Freeway, Suite 250 |
| Suite 2750, LB 25 | Dallas, Texas 75243 |
| Dallas, Texas 75204 | |

Gemma R. Galeoto, Esq.
Quilling Selander Lownds Winslett & Moser, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201

*/s/ Carl D. Hughes, Jr.*
Carl D. Hughes, Jr.