IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZAN GREEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-1498-N |
| | § | |
| JPMORGAN CHASE BANK, N.A., *et al.*, | § | |
| | § | |
| Defendants. | § | |

### ORDER

This Order addresses two motions: (1) a motion for summary judgment filed by Defendants JPMorgan Chase Bank, N.A., individually and as successor-in-interest to Washington Mutual Bank, F.A. ("JPMC"); Mortgage Electronic Registration Systems, Inc. ("MERS"); and MERSCORP Holdings, Inc. (collectively the "MSJ Defendants") [60]; and (2) Defendant CTX Mortgage Company, LLC's ("CTX") motion to dismiss [59]. The Court grants both motions.[1]

---

[1] Also before the Court are three other motions. The Court denies CTX's motion to extend certain deadlines [63] as moot. *See* Order, Jan. 30, 2013 [78]. The Court grants Green's motion to extend her time to respond to CTX's motion to dismiss [64]. Finally, the Court denies the MSJ Defendants' motion for leave to file an amended appendix [74] as moot because the Court rules in the MSJ Defendants' favor without reference to evidence at issue in that motion.

# I. THE PARTIES' DISAGREEMENT
## ABOUT GREEN'S MORTGAGE

This case is about the mortgage on Plaintiff Zan Green's home (the "Property"). On March 30, 2004, Green executed a note payable to CTX (the "Note") in order to purchase the Property. At the same time, she executed a deed of trust (the "Deed") encumbering the Property and securing payment of the Note. The Deed names MERS as nominee and beneficiary under the Deed and is recorded in the property records of Dallas County.

At some point, the Note and Deed were apparently assigned to Washington Mutual Bank ("WaMu"), though the MSJ Defendants point to no evidence confirming this fact. There is no record of any assignments in the Dallas County property records. The Federal Deposit Insurance Corporation took WaMu into receivership in 2008, and thereafter JPMC acquired Green's loan. JPMC currently holds the Note, which CTX indorsed in blank.

In 2010, Green defaulted on her loan. After the default, Defendant Selim Taherzadeh sent Green a letter in which he informed her that JPMC was accelerating the maturity date of Green's loan and had scheduled a foreclosure sale for the Property. Taherzadeh claimed to represent Defendant Brice, Vander Linden, & Wernick, P.C. ("Brice"), a law firm. JPMC, because of this lawsuit, has not yet foreclosed on the Property.

Green filed this action in Texas state court. JPMC, with the other Defendants' consent, removed to this Court. The Court previously granted CTX's motion to dismiss and granted in part Brice's motion to dismiss, granting Green leave to amend her complaint. *See* Order, Aug. 30, 2012 [50]. In response, Green filed an amended complaint [57], which is

the current live pleading.[2]  Green brings claims against CTX; JPMC; MERS; MERSCORP

Holdings, Inc.; Brice; and Taherzadeh.[3]

The amended complaint seeks to quiet title in the Property.  It further asserts that

Brice and Taherzadeh violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a,

*et seq.*; that JPMC violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et*

*seq.*; and that all Defendants are liable for common law negligence.  It also seeks declaratory

and injunctive relief.  Thus far, Taherzadeh has not appeared in this case.  The MSJ

Defendants move for summary judgment as to all claims against them, and CTX moves to

dismiss the amended complaint as to all claims against it.

## II.  STANDARD OF REVIEW FOR MOTIONS
### FOR SUMMARY JUDGMENT

Courts "shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  In making

this determination, courts must view all evidence and draw all reasonable inferences in the

light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.*, 369

U.S. 654, 655 (1962).  The moving party bears the initial burden of informing the court of

---

[2]The parties on occasion refer to this document as Green's "second amended complaint," presumably because Green earlier sought leave to file a different amended complaint.  Since Green has filed only one amended complaint [57], however, the Court refers to it as the "amended complaint."

[3] Also named as defendants are John and Jane Does 1–50, Trusts 1–50, Corporations 1–50, and the Property.

the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. THE RECORD DEMONSTRATES THAT THE MSJ DEFENDANTS DESERVE SUMMARY JUDGMENT

#### A. Green Has Standing to Challenge the Assignments

As a threshold matter, JPMC argues that "borrowers do not have standing to challenge the assignments of their mortgages because they are not parties to those assignments." Defs.'s Br. Supp. Mot. Summ. J. 8. The Court recognizes that several courts in this Circuit have issued opinions adopting this position, but this Court respectfully disagrees with those opinions.

The Court is aware of no Texas court that has denied standing to all borrowers to challenge assignments of their mortgages. Rather, as this Court has previously noted,

> The law is settled that the obligors of a claim may defend the suit brought thereon on any ground which renders the assignment void, but may not defend on any ground which renders the assignment voidable only, because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure himself that he will not have to pay the same claim twice.

*Puente v. CitiMortgage, Inc.*, No. 3:11-CV-2509-N, 2012 WL 4335997, at *6 (N.D. Tex. Aug. 29, 2012) (quoting *Kramer v. Fed. Nat'l Mortg. Ass'n*, No. A-12-CA-276-SS, 2012 WL 3027990, at *4–5 (W.D. Tex. May 15, 2012)); *accord Miller v. Homecomings Fin., LLC*, 881 F. Supp. 2d 825, 831 (S.D. Tex. 2012) ("Texas has long followed the common law rule which permits a debtor to assert against an assignee any ground that renders the assignment void or invalid.") (citing *Tri-Cities Constr., Inc. v. American Nat'l Ins. Co.*, 523 S.W.2d 426, 430 (Tex. Civ. App. – Houston [1st Dist.] 1975, no writ); *Glass v. Carpenter*, 330 S.W.2d 530, 537 (Tex. Civ. App. – San Antonio 1959, writ ref'd n.r.e.)). As the *Glass* court

observed, "a debtor may, generally, assert against an assignee all equities or defenses existing against the assignor prior to notice of the assignment, *any matters rendering the assignment absolutely invalid or ineffective*, and the lack of plaintiff's title or right to sue." 330 S.W.2d at 537 (quoting 6 C.J.S. *Assignments* § 132 [no ed. given])[4] (emphasis added). And, as the *Miller* court recognized, "Texas courts routinely allow a homeowner to challenge the chain of assignments by which a party claims the right to foreclose." 881 F. Supp. 2d at 832 (citing *Martin v. New Century Mortg. Co.*, No. 01-11-00792-CV, 2012 WL 2529251 (Tex. App. – Houston [1st Dist.] June 14, 2012, no pet.); *Austin v. Countrywide Home Loans*, 261 S.W.3d 68 (Tex. App. – Houston [1st Dist.] 2008, pet denied); *Leavings v. Mills*, 175 S.W.3d 301 (Tex. App. – Houston [1st Dist.] 2004, no pet.); *Shepard v. Boone*, 99 S.W.3d 263 (Tex. App. – Eastland 2003, no pet.); *Priesmeyer v. Pac. Sw. Bank, F.S.B.*, 917 S.W.2d 937 (Tex. App. – Austin 1996, no writ)).

In other words, Green has standing to assert that the assignments are *void*, but she lacks standing to assert that they are *voidable*. Accordingly, because Green asserts a number of grounds allegedly rendering the assignments void and none rendering them voidable, she has standing to bring them. Nevertheless, though she may assert these claims under Texas law, they are all unavailing.

---

[4]This text appears unaltered in the current edition of Corpus Jurus Secundum. *See* 6A C.J.S. *Assignments* § 132.

### B. JPMC Has Standing to Foreclose

Green's claims against the MSJ Defendants are based on the contention that, for one reason or another, JPMC lacks standing to foreclose on the Property. None of these reasons, however, holds up under scrutiny.

**1. JPMC Does Not Need to Produce the Original Note to Green.** – Green asserts that JPMC must demonstrate that it physically holds the original wet-ink Note. Courts across the state have emphatically rejected this "show-me-the-note" theory, which has no basis in Texas law. *See, e.g.*, *Crear v. JP Morgan Chase Bank N.A.*, No. 10-10875, 2011 WL 1129574, at *1 n.1 (5th Cir. Mar. 28, 2011) (unpub. and per curiam) ("The Texas Property Code provides that either a mortgagee or mortgage servicer may administer a deed of trust foreclosure without production of the original note." (citing TEX. PROP. CODE §§ 51.002, 51.0025)); *Preston v. Seterus, Inc.*, No. 3:12-CV-2395-L, 2013 WL 1091272, at *13 (N.D. Tex. Mar. 15, 2013); *Stephens v. LPP Mortg.*, 316 S.W.3d 742, 747 (Tex. App.–Austin 2010, pet. denied). JPMC, therefore, need not show Green – or anyone else, for that matter – the original note to have the authority to foreclose on the Property.[5]

**2. Any Note/Deed Bifurcation Does Not Affect JPMC's Ability to Foreclose.** – Green's next assertion is that the Note was not validly assigned to JPMC. Thus, Green argues, the Deed is "split" from the Note and that JPMC, if it holds any instrument at all, holds only the Deed and not the Note. According to Green, this bifurcation means that JPMC

---

[5]The Court further notes that JPMC has supplied the Court with sufficient evidence to show that it does indeed possess the original Note. Because the law is so clear that JPMC need not produce the Note, however, the Court need not consider this evidence.

cannot foreclose. Courts reject this theory as routinely as they reject the "show-me-the-note" theory. *See, e.g.*, *Puente*, 2012 WL 4335997, at *4–5 (N.D. Tex. Aug. 29, 2012); *Swim v. Bank of Am., N.A.*, No. 3:11-CV-1240-M, 2012 WL 170758, at *3 (N.D. Tex. Jan. 20, 2012) (collecting cases). Where "mortgage documents provide for the use of MERS[,] . . . the provisions are enforceable to the extent provided by the terms of the documents" – i.e., the language in the deed of trust controls. *Richardson v. CitiMortgage, Inc.*, No. 6:10CV119, 2010 WL 4818556, at *5 (E.D. Tex. Nov. 22, 2010); *see also, e.g.*, *Woods v. Bank of Am., N.A.*, No. 3:110-CV-1116-B, 2012 WL 1344343, at *5 (N.D. Tex. Apr. 17, 2012); *Swim*, 2012 WL 170758, at *3; *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 622–23 (N.D. Tex. 2011). It follows that "[i]n cases where 'MERS is a beneficiary and nominee for both the originating lender and its successors and assigns by express language in the [d]eed of [t]rust, the situation falls within an exception to the general rule that a party holding only the deed of trust cannot enforce the mortgage.'" *James v. Wells Fargo Bank, N.A.*, No. 3:11-CV-2228-B, 2012 WL 778510, at *3 (N.D. Tex. Mar. 12, 2012) (quoting *Eskridge v. Fed. Home Loan Mortg. Corp.*, No. W-10-CA-285, 2011 WL 2163989, at *5 (W.D. Tex. Feb. 24, 2011); *see also Swim*, 2012 WL 170758, at *3 ("Under the express language of the . . . [d]eed of [t]rust, MERS is a beneficiary and nominee for both the originating lender and its successors and assigns, creating authority for a party holding only a deed of trust, and not the underlying obligation, to foreclose."). Accordingly, the fact that

the parties used MERS does not affect either MERS's or CTX's right to foreclose under the Deed or to assign these rights under the Deed.  JPMC, too, thus has the right to foreclose.[6]

   ***3.  The Assignments Were Valid even Though They Were Not Recorded.*** – Next, Green contends that, because no one recorded the assignments of the Deed from MERS to WaMu and from WaMu to JPMC, JPMC lacks the authority to foreclose.  This argument fails as well.  The Texas Property Code expressly states that an "unrecorded instrument is binding on a party to the instrument."  Tex. Prop. Code § 13.001(b).  The recordation of an assignment puts third parties on notice of the assignment, but the recordation itself does not affect the validity of the transfer of interest.  *See Preston v. Seterus, Inc.*, No. 3:12-CV-2395-L, 2013 WL 1091272, at *11 (N.D. Tex. Mar. 15, 2013) (holding that "any alleged failure by Defendants to record assignments of the Note does not give rise to a claim based on wrongful foreclosure").  This proposition is generally true of recordation of other documents related to real property.  *See, e.g.*, *Broyles v. Chase Home Fin.*, No. 3:10-CV-2256-G, 2011 WL 1428904, at *2 (N.D. Tex. Apr. 13, 2011) (finding that assignments need not be recorded and noting that "Texas courts have consistently held that recordation is not necessary for liens, deeds, or deeds of trust to be enforceable against the parties to those instruments.") (citing *Denson v. First Bank & Trust of Cleveland*, 728 S.W.2d 876, 877 (Tex. App. – Beaumont 1987, no writ); *Shaw v. Jackson*, 227 S.W. 520, 522 (Tex. Civ. App. – Beaumont 1920, no writ)).  The fact that no assignment was recorded in

---

[6]There is ample evidence, as discussed below, that JPMC holds the Note.  Again, though, Green's argument so assuredly fails so that the Court need not address that evidence here.

this case, then, has no effect on the validity of the assignments themselves as to the parties to the assignment. The lack of recordation thus does not to create a dispute of material fact as to the assignments' effectiveness as transfers of interest in the Property.

Green points to the Texas Local Government Code as providing, despite the statutory and case law cited above, that an unrecorded assignment is wholly invalid. That section provides as follows:

> To release, transfer, assign, or take another action relating to an instrument that is filed, registered, or recorded in the office of the county clerk, a person must file, register, or record another instrument relating to the action in the same manner as the original instrument was required to be filed, registered, or recorded.

TEX. LOC. GOV'T CODE § 192.007(a). Green reads this section as requiring, regardless of the text of the Texas Property Code, that an assignment be recorded. The Court is aware of no Texas state court case – and very few federal cases – discussing this statutory text. Such statutory analysis seems necessary, however, in light of the ostensibly contradictory text in the Property Code stating that an "unrecorded instrument is binding on a party to the instrument." TEX. PROP. CODE § 13.001(b); *see also id.* § 51.0001(4) (recognizing that recordation of assignment is one of several methods of establishing status as mortgagee). When a state high court has not ruled on a particular issue of state law, a court must make an "*Erie* guess" and determine as best it can what the state high court would most likely decide. *See Erie v. Tompkins*, 304 U.S. 64, 78 (1938); *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 317 (5th Cir. 2002).

In this case, the Court concludes that the Texas Supreme Court would decide that Texas Government Code § 192.007 does not require recordation of an assignment for that assignment to be effective as to the parties to the assignment. First, section 192.007 does not state that failure to record voids an assignment as to any or all parties or that it affects the ability of an assignee to foreclose. *Accord Miller*, 881 2d F. Supp. 2d at 830 (noting that "[t]he legal consequences of failing to comply with this statutory command are unclear"). In a recent case, the Texas Supreme Court analyzed a statute requiring that a police officer swear to an arrest report. *Tex. Dep't of Pub. Safety v. Caruana*, 363 S.W.3d 558 (Tex. 2012). The Court noted that the statute "does not prescribe the consequence for a failure to satisfy that requirement" and concluded that, "[i]f some sanction should be imposed, it need not be automatic exclusion of an arrest report" from trial. *Id.* at 564. Likewise, because the consequence of noncompliance with section 192.007 is unspecified, the Court declines to assume that that consequence is to render the assignment void or ineffective as to the parties to the assignment. This conclusion is especially appropriate in light of the fact that, as discussed above, Texas courts have consistently found that recordation has no effect on a party's ability to foreclose.

Second, Texas law governing facially conflicting statutes compels the same result. Section 192.007, which on its face requires recordation of assignments, could be read – as Green urges – to conflict with Texas Property Code § 13.001(b), which states that unrecorded instruments are valid as to the parties to the instrument. Under Texas law, a court should first attempt to harmonize apparently conflicting statutes so as to give effect to both. *See* TEX.

GOV'T CODE § 311.026(a); *Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 531 (Tex. 2002). If reconciliation is impossible, a special provision prevails over a general provision, "unless the general provision is the later enactment and the manifest intent is that the general provision prevail." *Id.* § 311.026(b). In construing a statute, a court may consider a number of factors, among them the circumstances under which the statute was enacted, the statute's legislative history, and the consequences of a particular construction. TEX. GOV'T CODE § 311.023.

In this case, the Court reads section 192.007 as a mere administrative requirement that, to the extent a party wishes to records an action related to a previously filed instrument, the person must file a new instrument rather than merely annotate the existing instrument. *Accord Richard v. CIT Grp.*, Civ. A. No. H-12-848, 2012 WL 3030348, at *1 (S.D. Tex. July 21, 2012) (concluding section 192.007 "requires that anyone who had filed an instrument to also record changes to it in a new document rather than alter the original document already in the county's records"). There are several reasons the Court comes to this conclusion.

As an initial matter, the Court's reading comports with subsection 192.007(b), which follows the text at issue here and requires that "[a]n entry, including a marginal entry, may not be made on a previously made record or index to indicate the new action." The Court's construction also explains why this section appears in a subtitle of the Local Government Code entitled "County Records," a subtitle dealing primarily with the administrative affairs of county clerks. *See, e.g., id.* § 192.006(b) ("The county clerk shall keep the records of the county court properly indexed and arranged."). That the text appears here rather than in the Property Code, which explains the rights and obligations of those with interests in property,

ORDER – PAGE 12

suggests that the section has to do with administrative requirements rather than the effectiveness of transfers of those interests.

Furthermore, the bill enacting section 192.007 was entitled "Governmental Records – Creation, Maintenance, Preservation, Microfilming, Destruction and Access." 1989 Tex. Sess. Law Serv. 1248. This title suggests that the bill was meant to deal with administrative affairs, not the rights and duties of those with interests in property and the means of transferring those rights. There is no indication of legislative intent to overturn the longstanding Texas rule that an assignment binds the parties even absent recordation.

Moreover, a court decision requiring recordation in order to validly assign a property interest would substantially alter Texas law and the rights of individuals who have assigned such interests under current law. Construing this section to effect such a radical change would have far-reaching consequences that, the Court believes, the Texas Supreme Court would be unlikely to want to bring about. In short, based on the Code's language, section 192.007's legislative history, and the potential consequences of a contrary construction, the Court believes the Texas Supreme Court would construe this section to be a mere administrative requirement that has no bearing on the legal effect of a person's decision not to file an assignment. Texas Property Code § 13.001 thus remains in full force and continues to provide that an assignment binds the parties to the assignment, whether or not it is recorded.

The Court further concludes that, even if the apparent conflict between sections 192.007 and 13.001 conflict were irreconcilable, section 13.001 would prevail because of the

ORDER – PAGE 13

rule privileging special provisions over general.  *See* TEX. GOV'T CODE § 311.026(b).  This

rule of construction applies only "if two statutes share a common purpose or object."

*Howlett v. Tarrant Cnty.*, 301 S.W.3d 840, 846 (Tex. App. – Fort Worth 2009, pet. denied).

To the extent these two statutes conflict irreconcilably, they do so because they share the

common purpose of defining the circumstances under which an unrecorded instrument

related to real property is valid.  Section 13.001 qualifies as a special condition because it

deals specifically with the effects of recordation on parties to the instrument, whereas section

192.007 broadly and without facial limitation mandates that a person "must" file a new

instrument to assign a previously filed instrument.  Section 13.001 therefore prevails over

section 192.007.[7]  In other words, to the extent that they actually conflict, section 13.001

carves out an exception to section 192.007: a person must file a new instrument relating to

a previously filed instrument per section 192.007, but failure to do so has no effect on the

instrument's effectiveness as spelled out in section 13.001.

　　　　The Court's *Erie* guess, then, is that section 192.007 has no effect on section 13.001.

This is so because (1) section 192.007 prescribes no consequences for its violation, (2) the

statues can be read in harmony with one another, and (3) even if they truly conflicted, section

13.001 would prevail over section 192.007.  Accordingly, the Court concludes that the fact

---

[7]It is true that section 13.001 predates section 192.007.  However, there is no manifest
intent that section 192.007 should prevail over section 13.001.  Therefore, the general rule
that the special provision trumps the general provision applies.  *See* TEX. GOV'T CODE §
311.026(b).

that the assignment was not recorded does not affect JPMC's standing to foreclose on the Property.

    ***4. CTX Validly Indorsed the Note in Blank.*** – Green also asserts that CTX did not validly assign the Note.  The MSJ Defendants included a true and correct copy of the Note in their summary judgment appendix.  *See* Defs.' App. Supp. Mot. Summ. J. [hereinfter Defs.' App.] [61-1], Exs. A, A-1.  Green claims that the fact that CTX indorsed the note on an allonge – a blank page following the printed portion of the Note –  rather than on the signature page, renders the indorsement invalid.  The Court disagrees.

    Under Texas law, an instrument is indorsed in blank if it does not identify a person to whom the indorsement makes the instrument payable.  TEX. BUS. & COM. CODE § 3.205(a).  "When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed."  *Id.* § 3.205(b).  These rules, as the Fifth Circuit has observed in an unpublished opinion, apply to notes secured by mortgages.  *See Kiggundu v. Mortg. Elec. Registration Sys. Inc.*, 469 F. App'x 330, 331–32 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 210 (2012) ("Because the note was endorsed in blank and the Bank of New York was in possession of the note, under Texas law, the Bank of New York was entitled to collect on it.").  In this case, then, CTX's blank indorsement made the Note payable to the person bearing the Note.  Since JPMC now bears the note, the Note is payable to JPMC.  Thus, if CTX validly executed the indorsement, JPMC is entitled to collect on the Note.

Green contends that the indorsement is not valid, but the summary judgment record suggests otherwise. It is not clear from the record whether CTX indorsed the Note on the back of the last page or on an allonge. Even if the indorsement is, as Green asserts, on an allonge, however, the indorsement would be valid. "The use of an allonge, without more, does not create an automatic fact issue" as to whether the indorsement is valid . *Casterline v. OneWest Bank, F.S.B.*, No. 2:12-CV-00150, 2012 WL 6630024, at *3 (S.D. Tex. Dec. 19, 2012) (citing *Sw. Resolution Corp. v. Watson*, 964 S.W.2d 262, 264 (Tex. 1997)); *see also* TEX. BUS. & COM. CODE § 3.204, cmt. 1 ("An indorsement on an allonge is valid even though there is sufficient space on the instrument for an indorsement."). Green has pointed to no other indication that the indorsement is suspect. Moreover, Green has not affirmatively alleged that the indorsement is fraudulent. *See Martinez v. Bank of Am.*, N.A., No. SA-12-CV-462-XR, 2013 WL 489992, at *10 (W.D. Tex. Feb. 7, 2013) (finding no irregularity in allonge with two indorsements "absent any affirmative factual allegations impugning the validity of the indorsement to Defendant"). The MSJ Defendants' evidentiary appendix states that the copy of the Note in the record "is a true and correct copy." Defs.' App., Ex. A, ¶ 8. The Court accepts this representation. Because the mere use of an allonge does not give rise to a fact issue, and because Green has pointed to no other evidence that the indorsement is invalid, the Court concludes that there is no factual dispute as to whether the indorsement is valid.

In short, the summary judgment evidence demonstrates that CTX validly indorsed the Note in blank. JPMC, as the bearer of the Note, is therefore entitled to collect on it.

***5. JPMC's Possession of the Note and Deed Is Sufficient.*** – Green objects to the lack of evidence supporting the assignments of the Note and Deed from CTX to WaMu and from WaMu to JPMC.  As explained above, however, JPMC's mere possession of the Note is sufficient to prove that it is entitled to collect on it.  "Moreover, under Texas law, the mortgage follows the note." *Kiggundu*, 469 F. App'x at 332 (citing *Lawson v. Gibbs*, 591 S.W.2d 292, 294 (Tex. App. – Houston [14th Dist.] 1979, writ ref'd n.r.e.); *United States v. Vahlco Corp.*, 720 F.2d 885, 891 (5th Cir. 1983)); *see also* TEX. BUS. & COM. CODE § 9.203(g); *id.* cmt. 9 ("Subsection (g) codifies the common-law rule that a transfer of an obligation secured by a security interest or other lien on personal or real property also transfers the security interest or lien.").  That is, the Deed – the lien securing the debt – traveled with the Note to JPMC.  The fact that there is no evidence in the summary judgment record demonstrating how JPMC obtained possession of the Note, and therefore the Deed, does not raise a fact issue as to JPMC's authority to collect on the Note or enforce the terms of the Deed, including by foreclosing on the Property.[8]

***6. The Note Was Not Securitized.*** – Green also claims that, if the Note was securitized, Defendants did not follow the proper procedures for securitizing it.  The MSJ Defendants, however, introduced summary judgment evidence that the Note was not securitized.  *See* Decl. of Alicia Brooks, Defs.' App. Ex. A, ¶ 5.  Because Green has pointed to no contradictory evidence, there is no factual dispute on this point.  The alleged faulty

---

[8]Green also maintains that MERS had no authority to assign its interest in the Note. But MERS did not indorse the Note: CTX did.

securitization of the Note therefore has no effect on JPMC's ability to foreclose on the Property.

**7. *None of Green's Allegations About MERS Affect JPMC's Rights Under the Note and Deed.*** – Green asserts a number of allegations about MERS and its manner of operation. For instance, she claims that its records are unreliable and that it illegally possesses her social security number. It is not clear whether Green is asserting that these alleged problems with MERS undermine JPMC's standing to foreclose. To the extent she is, the Court concludes that the asserted defects in MERS are unrelated to JPMC's authority to enforce the terms of the Deed. The Court is aware of no decision in which a court found that any alleged irregularities concerning MERS undermine MERS's or any other party's power to enforce the terms of a deed. In contrast, scores of courts have upheld the validity of deeds in which MERS is named nominee and beneficiary. *See supra* section III.B.2.

**8. *The Notary's Acknowledgment Does Not Affect JPMC's Authority to Foreclose.*** – Green notes that the Deed was signed on March 30, 2004, but that the acknowledgment of the notary public that Green signed the Deed bears the date of the following day. The acknowledgment, however, states that Green proved her identity to the notary by way of Green's Texas driver's license. Defs.' App. 32. It does not expressly state that the notary was present when Green signed the Deed. *Id.* The Court finds no reason to doubt the acknowledgment. Furthermore, Green has not affirmatively alleged that she did not in fact

sign the Deed or that the Deed is somehow fraudulent.  This argument therefore has no effect on the validity of the Deed or JPMC's ability to enforce its terms.[9]

### 9. The Identity of the Trustee Does Not Affect JPMC's Authority Under the Deed.

– Green asserts two final flaws that she alleges make the Deed invalid: (1) that the original trustees were CTX employees, thus creating a conflict of interest, and (2) that no substitute trustee has been appointed because no such appointment appears in the Dallas County property records.  Neither of these arguments affects the Deed's validity.

First, the only evidence Green offers in support of her conflict-of-interest claim is that the original trustees and CTX shared an address.  She points to no law suggesting that this situation could either invalidate the original Deed or interfere with JPMC's ability to foreclose under the Deed, and the Court is aware of none.

Second, the Deed expressly grants CTX and MERS, and consequently its assignees, the authority to "remove or substitute any trustee, add one or more trustees, or appoint a successor to any Trustee without the necessity of any formality other than a designation by Lender in writing."  Defs.' App. 29.  The Deed does not mandate that appointment of a substitute trustee be recorded.  Likewise, the Texas Property Code contains no such requirement.  The Code provides that a mortgagee may appoint a substitute trustee "by power of attorney, corporate resolution, or other written instrument."  TEX. PROP. CODE § 51.0075; see also Gillespie v. BAC Home Loans Servicing, LP, No. 4:11-CV-388-A, 2013 WL

---

[9]Likewise, the Court finds no reason to doubt the validity of the Deed on account of the notary's failure to keep a record of Green's signature in her log book.

646383, at *6 (N.D. Tex. Feb. 21, 2013) ("The plain language of the Property Code does not indicate the existence of any requirement that the appointment of a substitute trustee be recorded to be valid, and courts interpreting the provisions have not found such a requirement.") (citing cases). Moreover, the Court concludes, for the reasons discussed above, that Texas Government Code § 192.007 does not alter the Texas Property Code's requirements regarding recordation of substitute trustees. *See supra* section III.B.3. Green has, in other words, pointed to no irregularity regarding the appointment of trustees that would prevent JPMC from foreclosing on the Property.

*10. Conclusion as to JPMC's Standing to Foreclose.* – Green advances a number of theories as to why JPMC does not have the authority or ability to foreclose on the Property under the terms of the Deed and Texas law. None of these theories, however, stands up under the weight of the evidence in the summary judgment record. As a result, as explained below, Green's claims against the MSJ Defendants fail as well.

### C. None of Green's Claims Against the MSJ Defendants Survive Summary Judgment[10]

Green's claims against the MSJ Defendants all rely on one or more of the arguments discussed above. For that reason, the MSJ Defendants are entitled to summary judgment as to all of Green's claims against them.

**1. Quiet Title.** – The principal issue in a quiet title action is "the existence of a cloud that equity will remove." *Metcalf v. Deutsche Bank Nat. Trust Co.*, No. 3:11-CV-3014-D, 2012 WL 2399369, at *6 (N.D. Tex. June 26, 2012) (quoting *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App. – Waco 1980, writ ref'd n.r.e.)). "A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property." *Gordon v. W. Hous. Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App. – Houston [1st Dist.] 2011, no pet.). If a plaintiff prevails in a quiet title action, the Court declares invalid or ineffective the defendant's claim to title. *Id.* A plaintiff in a quiet title claim must prove that (1) he has an interest in a specific property, (2) title to the property is affected by a claim by the defendant or defendants, and (3) the claim, although facially valid, is invalid or unenforceable. *Bell v. Bank of Am. Home Loan*

---

[10]Green asserts that she has not been accorded reasonable time period in which to conduct discovery and that summary judgment is thus premature. The Court disagrees. This case has been pending since July 7, 2011, and this motion was filed on November 27, 2012. The Court originally set trial for December 3, 2012, with discovery scheduled to close ninety days prior to trial. *See* Scheduling Order [19] ¶¶ 1, 3(e). The Court, on CTX's unopposed motion, later extended the discovery deadline to December 3, 2012. *See* Order, July 12, 2012 [28]. Even considering Green's attorney's late entrance into the case, the Court determines that Green has had sufficient time for discovery and that the MSJ Defendants' motion is not premature.

*Servicing LP*, No. 4:11-CV-02085, 2012 WL 568755, at \*7 (S.D. Tex. Feb. 21, 2012) (citing *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507, at \*3 (Tex. App. – Houston [1st Dist.] Dec. 30, 2011, no pet.) (mem. op.)).   In a quiet title action, a plaintiff can only recover on the strength of his or her own title, not the weakness of any defendant's title. *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App. – Corpus Christi 2001, no pet.) (citing *Alkas v. United Sav. Ass'n of Tex., Inc.*, 672 S.W.2d 852, 857 (Tex. App. – Corpus Christi 1984, writ ref'd n.r.e.)).

In this case, Green cannot satisfy the third element as to any of the MSJ Defendants. As explained above, JPMC holds the Note, validly indorsed in blank, and consequently the Deed.   JPMC's claim to the Property is thus valid and enforceable.   Moreover, the Deed identifies MERS as CTX's nominee and beneficiary, and there is no evidence in the record that tends to undermine the validity or enforceability of any claim MERS has asserted or possesses.   Thus, because their claims are valid and enforceable, the MSJ Defendants are entitled to summary judgment on Green's quiet title claim.

**2. FCRA.** – Green brought her FCRA claim only against JPMC.   JPMC, in turn, moves for summary judgment, and Green has not responded.   The Court accordingly deems Green to have waived this claim. *See Hinojosa v. Tarrant Cnty., Tex.*, No. 4:08-CV-315-A, 2009 WL 1309218, at \*10 (N.D. Tex. May 5, 2009) (deeming claim waived under similar circumstances), *aff'd sub nom. Cook v. Tarrant Cnty., Tex.*, 372 F. App'x 493 (5th Cir. 2010) (unpub.).   The Court therefore grants summary judgment to the MSJ Defendants as to this claim.

**3.** *Negligence.* – Green's negligence claim against the MSJ Defendants is based on their failure to record the assignments, as allegedly required by Texas Government Code § 192.007.  The elements of a negligence cause of action are (1) the existence of a duty, (2) a breach of that duty, and (3) damages proximately caused by the breach.  *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).  Green has pointed to no evidence that the MSJ Defendants owed her a duty, that they breached that duty by failing to record the assignment, or that that failure led to damages.  They thus could not have been negligent under this theory.[11]

**4.** *Declaratory and Injunctive Relief.* – The Declaratory Judgment Act ("DJA")[12] is a procedural device: it creates no substantive rights and requires the existence of a justiciable controversy.  *See Lowe v. Ingalls Shipbldg.*, 723 F.2d 1173, 1179 (5th Cir. 1984); *see Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937).  Thus, the DJA can provide no relief to a plaintiff unless a justiciable controversy exists between the parties.  *See Kazmi v. BAC*

---

[11]Green's complaint could be read to assert that the MSJ defendants were negligent per se by failing to comply with the terms of section 192.007.  To establish negligence per se, a plaintiff must prove that (1) the defendant's act or omission is in violation of a statute or ordinance, (2) the injured person was within the class of persons which the ordinance was designed to protect, and (3) the defendant's act or omission proximately caused the injury.  *See El Chico Corp. v. Poole*, 732 S.W.2d 306, 312 (Tex. 1987).  In this case, Green has not alleged that the second or third element is satisfied, and there is no evidence to support such allegations in any case.

[12]Removal from state to federal court, in effect, converts a state court declaratory judgment action into one under the DJA.  *See, e.g.*, *Turner v. AmericaHomeKey, Inc.*, No. No. 3:11-CV-0860-D, 2011 WL 3606688, at *5 n.11 (N.D. Tex. Aug. 16, 2011); *Morrice Logistics, Ltd. v. Intransit Inc.*, No. EP-10-CV-417-KC, 2011 WL 1327397, at *4 n.1 (W.D. Tex. Apr. 5, 2011).

*Home Loans Servicing, L.P.*, No. 4:11-CV-375, 2012 WL 629440, at *15 (E.D. Tex. Feb. 3, 2012); *Turner v. AmericaHomeKey Inc.*, No. 3:11-CV-0860-D, 2011 WL 3606688, at *5 (N.D. Tex. Aug. 16, 2011) (explaining that DJA is "merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law"). Because the Court grants summary judgment to the MSJ Defendants on all of Green's underlying cause of action against them, no actual controversy between Green and the MSJ Defendants remains. The MSJ Defendants are thus entitled to summary judgment on Green's claim for declaratory relief.[13]

To prevail on a claim for injunctive relief in federal court, a plaintiff must show, among other things, "a substantial likelihood of success on the merits." *DSC Comm. Corp. v. DGI Techs, Inc.*, 81 F.3d 597, 600 (5th Cir. 1996). Because no justiciable controversy remains between Green and the MSJ Defendants, Green cannot succeed on the merits of any of her claims. She is thus not entitled to injunctive relief, and the MSJ Defendants deserve summary judgment as to this claim, too.

---

[13]Green asserts for the first time in her response to the MSJ Defendants' motion that she is entitled to a declaratory judgment that JPMC did not comply with the terms of the Deed when it sent Green a notice that it was accelerating the Note's maturity date. "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir.1990)). Because Green did not assert this claim in her amended complaint, the Court declines to consider it.

### D.  The Court Overrules Green's Objections
### to the MSJ Defendants' Evidence

Green objects to four pieces of the MSJ Defendants' evidence that, she alleges, the MSJ Defendants failed to authenticate properly: (1) the Note, (2) the Deed, (3) a letter to Green from JPMC's attorney, and (4) Green's deposition testimony.  The Note, however, is authenticated by Alicia Brooks, a JPMC senior research specialist.  *See* Brooks Decl. ¶ 8, Defs.' App. 2.  Moreover, the Deed is a certified copy of a public document.  *See* Defs.' App. 37.  A certified public document is self-authenticating and requires no further evidence of authenticity.  *See* FED. R. EVID. 902(4).  The Note and Deed are thus properly authenticated, and the Court overrules Green's objections to these documents.  Because the Court does not rely on the letter or deposition testimony in reaching its decision, the Court overrules Green's objections to them as moot.

### E.  Conclusion as to the Motion
### for Summary Judgment

Green has standing to assert that any assignment of the Note or Deed was void.  Though she asserts claims based on several theories as to why the JPMC is not entitled to foreclose on the Property, the summary judgment evidence shows no genuine dispute as to any of them.  The Court accordingly grants the MSJ Defendants' motion for summary judgment as to all the claims Green asserts against them.

### IV.  STANDARD FOR MOTIONS TO DISMISS

When faced with a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief.  *Blackburn v. City of Marshall*,

42 F.3d 925, 931 (5th Cir. 1995).  A viable complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff.  *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012).  But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).  A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff.  *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  However, a court may also consider certain documents outside of the pleadings if they fall within four limited categories.  First, "[a] court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).  Second, "[a] written

document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "[t]he district court took appropriate judicial notice of publically available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

## V. THE COURT GRANTS CTX'S MOTION TO DISMISS

Green has failed, for the second time, to state a claim against CTX. In deciding CTX's motion, the Court may consider both the Note and the Deed, as Green attached both of these documents to her amended complaint. *See* Am. Compl. Exs. A, B.

### A. Green Has Not Stated a Negligence Claim

In her amended complaint, Green maintains that CTX was negligent by allegedly failing to appoint a neutral trustee. Again, the elements of a negligence cause of action are (1) the existence of a duty, (2) a breach of that duty, and (3) damages proximately caused by

the breach.  *W. Invs.*, 162 S.W.3d at 550.  Green, however, has alleged none of these elements.  She has not indicated that CTX had a duty to her, the nature of any duty, or that CTX's appointment of the original trustees breached a duty.  Moreover, she has not pled that the appointment of the allegedly partial trustees is a proximate cause of her damages.[14]  The Court concludes, therefore, that Green has not stated a claim for negligence against CTX.

### B. Green's Quiet Title Claim Is Deficient

As noted above, a plaintiff asserting a quiet title claim must prove that (1) he or she has an interest in a specific property, (2) title to the property is affected by a claim by the defendant or defendants, and (3) the claim, although facially valid, is invalid or unenforceable.  *Bell*, 2012 WL 568755, at *7.  In this case, Green offers no factual assertions that raise her right to relief as to her quiet title claim above a speculative level.  There are no allegations that CTX actually claims an interest in the Property.  Moreover, to the extent such an interest exists, there are no factual allegations giving rise to a plausible claim that the claim is facially valid yet unenforceable.  The Court therefore dismisses this claim.

### C. The Court Dismisses Green's Claims for Declaratory and Injunctive Relief

As explained above, a court cannot grant declaratory or injunctive relief absent an underlying justiciable controversy.  In this case, the Court has dismissed all of Green's

---

[14]In her response to CTX's motion, Green lists a number of additional ways in which CTX was allegedly negligent, but she has asserted none of these in her amended complaint. The Court thus declines to consider them.

underlying claims against CTX.  Accordingly, the Court dismisses Green's claims for declaratory and injunctive relief as well.

CONCLUSION

The Court grants JPMC, MERS, and MERSCORP Holdings, Inc.'s motion for summary judgment.  The Court also grants CTX's motion to dismiss.  Because the Court previously dismissed Green's claims against CTX and because Green has not asked for leave to amend her complaint, the Court dismisses Green's claims against CTX with prejudice and declines to grant her leave to amend.  Pursuant to Federal Rule of Civil Procedure 54(b), the Court will enter a final judgment as to all of Green's claims against JPMC; MERS; MERSCORP Holdings, Inc.; and CTX.  This Order does not affect Green's claims against any other Defendant.

Signed April 8, 2013.

David C. Godbey
United States District Judge

ORDER – PAGE 29